**FILED**

DEC 14 2007

DEC 1 4 2007

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CIVIL ACTION

UNITED STATES OF AMERICA, for the
Use and Benefit of INDUSTRIAL FENCE, INC.,
an Illinois corporation,                                )

          Plaintiff,                                    )

  v.                                                    )

                                                        )
PICKUS CONSTRUCTION AND EQUIPMENT                       )
COMPANY, INC., an Illinois corporation; and             )
FIDELITY AND DEPOSIT COMPANY OF                         )
MARYLAND,                                               )
                                                        )
                                                        )
          Defendants.                                   )

**07CV7024**
**JUDGE COAR**
**MAG. JUDGE COX**

## VERIFIED COMPLAINT

## PARTIES

Plaintiff Industrial Fence, Inc. alleges as follows:

1.      That Plaintiffs are the United States of America for the use and benefit of Industrial Fence, Inc. (hereinafter referred to as Industrial Fence) an Illinois corporation with its principal place of business at 1300 South Kilbourn Avenue, Chicago, Illinois. Industrial Fence was the subcontractor for the project at issue in this lawsuit.

2.      That Defendant Pickus Construction and Equipment Company, Inc. is an Illinois corporation (hereinafter referred to as Pickus). Pickus can be served via its registered agent in the state of Illinois, Jeffry J. Pickus, 3330 Skokie Highway, Suite 300, Highland Park, Illinois 60035. Pickus was the general contractor for the project at issue in this lawsuit.

1

3.    That Defendant Fidelity and Deposit Company of Maryland is a corporation authorized to transact business in the state of Illinois.  Service of process can be made upon it through the Illinois Department of Insurance at 100 West Randolph, Suite 9-301, Chicago, Illinois 60601.

JURISDICTION AND VENUE

4.    That this court has jurisdiction over this matter pursuant to the Miller Act, 40 U.S.C. §3133 *et. seq.*, in that Plaintiff's claims are for payment under a bond issued under the Act.

5.    That venue is appropriate in this District because the construction contract, which the Miller Act bond secured, was executed and performed at the Great Lakes Military Housing located in Great Lakes Illinois which resides in this District.

FACTS

6.    That on a date prior to February 14, 2006, Pickus Construction and Forest City Military Communities on behalf of the US Navy entered into a contract to perform work known as the Naval Residential Reconstruction Great Lakes Military Housing project located at Fort Sheridan & Forrestal Village Alt. 2, Great Lakes, Illinois.

7.    That Pickus was the general contractor for the contract.

8.    That Pickus, pursuant to the Contract and / or 40 U.S.C. §3131 et seq. provided the United States of America with a payment bond ("Bond") to secure payment to subcontractors such as Industrial Fence.

9.    That the bond was executed by Pickus and Fidelity and Deposit Company of Maryland.  A copy of said bond is attached hereto as Exhibit A and incorporated herein by

2

reference as if fully set forth. Fidelity and Deposit Company of Maryland is the surety of said Bond.

10.    That on or about February 14, 2006, Pickus, in the performance of said contract, entered into a Subcontract Agreement with Industrial Fence for the performance of, among other things, security fencing and related work. A copy of said Subcontract between Pickus and Industrial Fence is attached hereto as Exhibit B. The original subcontract price between the parties was Nine Hundred Seventy Eight Thousand Four Hundred Forty Five Dollars and Zero Cents ($978,445.00).

11.    That the cost of additional work increased the value of the subcontract in the amount of $52,695.62. That change orders performed and completed by Industrial Fence while Pickus was still acting as General Contractor were in the amount of $47,022.63. See initialed billing transmittals evidencing the change order work attached hereto as Exhibit C. The billing transmittals were initialed by Larry Collett of Pickus.

12.    That Industrial Fence completed all of the work it was allowed to complete in a good and workmanlike manner in June 2007.

13.    That upon completing various work under the subcontract agreement, Industrial Fence issued invoices to Pickus for payment. Despite repeated requests, Pickus has failed to pay Industrial Fence the sum of Two Hundred Sixty-Two Thousand One Hundred Fifty Four Dollars and Forty-Six Cents ($262,154.46) for work and materials supplied on the project including extras and change orders.

Count I<br>Action on the Bond

14.    That the allegations alleged in paragraph 1 through 13 are incorporated herein by reference as is fully set forth.

15.    That as a consequence of being the surety of the Bond, Fidelity and Deposit Company of Maryland has the obligation and legal duty under the Contract to pay valid claims, like those claimed by Industrial Fence.

16.    That pursuant to the terms of the payment bond and 40 U.S.C. §270 et. seq., Fidelity and Deposit Company of Maryland is indebted to Industrial Fence in the sum of Two Hundred Sixty-Two Thousand One Hundred Fifty Four Dollars and Forty-Six Cents ($262,154.46).

WHEREFORE, Plaintiff Industrial Fence demands a judgment against Fidelity and Deposit Company of Maryland requiring it to release the sum of Two Hundred Sixty-Two Thousand One Hundred Fifty Four Dollars and Forty-Six Cents ($262,154.46) from the Bond in satisfaction of all amounts owed to Industrial Fence by Pickus for breach of the contract, the costs of this action, pre and post judgment interest, reasonable attorneys' fees and such further relief as this Court deems just.

## Count II
### Breach of Contract By Pickus

17.    That the allegations in paragraph 1 through 13 are incorporated herein by reference as if fully set forth.

18.    That Industrial Fence performed all work under the Subcontract in a professional and workmanlike manner.

19.    That Industrial Fence periodically invoiced Pickus for its work.

4

20.    That despite repeated requests, Pickus has failed to pay Industrial Fence the sum of Two Hundred Sixty-Two Thousand One Hundred Fifty Four Dollars and Forty-Six Cents ($262,154.46).

21.    That Pickus has breached the terms of the Subcontract with Industrial Fence by failing to pay the invoiced amount, damaging Industrial Fence in the sum of Two Hundred Sixty-Two Thousand One Hundred Fifty Four Dollars and Forty-Six Cents ($262,154.46).

WHEREFORE, Plaintiff Industrial Fence demands a judgment against Pickus for breach of contract in the amount of Two Hundred Sixty-Two Thousand One Hundred Fifty Four Dollars and Forty-Six Cents ($262,154.46), the costs of this action, pre and post judgment interest, reasonable attorneys' fees and such further relief as this Court deems just.


Respectfully Submitted,
THE LAW OFFICES OF BURTON A. BROWN


Attorney for Plaintiff Industrial Fence, Inc.


Law Offices of Burton A. Brown
Burton A. Brown
Stephen Spiegel
205 West Wacker
Suite 922
Chicago, Illinois 60606
312-236-5582
ARDC 0312045

## VERIFICATION BY CERTIFICATION

Under penalties of perjury as provided by law pursuant to 28 U.S.C. §1746 of the Code of Federal Civil Judicial Procedure, the under signed verifies that the statements set forth in the foregoing instrument(s) are true and correct, except as to matters the undersigned verifies as aforesaid that (s)he believes the same to be true.

Miguel A. Saltijeral
President
Industrial Fence, Inc.

SUBSCRIBED and SWORN to before me
this 2ND day of November , 2007.

NOTARY PUBLIC

OFFICIAL SEAL
ALAN L TUTJE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/17/11

Law Offices of Burton A. Brown
205 West Wacker
Suite 922
Chicago, Illinois 60606
312-236-5582

6

# EXHIBIT A

BOND NO.
08841772

# THE AMERICAN INSTITUTE OF ARCHITECTS

*AIA Document A312*

# **Payment Bond**

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

---

**CONTRACTOR (Name and Address):**
Pickus Construction & Equipment
Company, Inc. DBA The Pickus Companies
3330 Skokie Valley Road, Suite 300
Highland Park, IL 60035

**OWNER (Name and Address):**
Forest City Military Communities
1615 L Street, NW, Suite 400
Washington, DC 20036

**SURETY (Name and Principal Place of Business):**

Fidelity and Deposit Company of Maryland
300 Saint Paul Place
Baltimore, MD 21202

**CONSTRUCTION CONTRACT**
Date:
Amount: $5,410,290.07    Five Million Four Hundred Ten Thousand Two Hundred Ninety Dollars and 07/100

Description (Name and Location): Great Lakes Military Housing, Chicago, Illinois - Ft. Sheridan & Forrestal Village Alt. 2 (Bond Number 3).

**BOND**
Date (Not earlier than Construction Contract Date): February 16, 2007
Amount: $5,410,290.07    Five Million Four Hundred Ten Thousand Two Hundred Ninety Dollars and 07/100

Modifications to this Bond:                    ☐ None                    ☒ See Page 3

---

**CONTRACTOR AS PRINCIPAL**
Company:                    (Corporate Seal)
Pickus Construction & Equipment
Company, Inc. DBA The Pickus Companies

Signature:
Name and Title: President

(Any additional signatures appear on page 3)

**SURETY**
Company:                    (Corporate Seal)
Fidelity and Deposit Company of Maryland

Signature:
Name and Title: Pam J. Klasen    , Attorney-in-fact

---

**(FOR INFORMATION ONLY - Name, Address and Telephone)**
**AGENT OR BROKER:**

Tillman Filippini, an HRH Company
One East Wacker Drive, Suite 1800

Chicago, IL 60601

312-527-9600

**OWNER'S REPRESENTATIVE (Architect, Engineer or other party):**

---

**1**    The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

**2**    With respect to the Owner, this obligation shall be null and void if the Contractor:

**2.1**    Promptly makes payment, directly or indirectly, for all sums due Claimants, and

**2.2**    Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, provided there is no Owner Default.

**3**    With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

**4**    The Surety shall have no obligation to Claimants under this Bond until:

**4.1**    Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

**4.2**    Claimants who do not have a direct contract with the Contractor:

**.1**    Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

**.2**    Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

**.3**    Not having been paid within the above 30 days, have sent a written notice to the Surety

(at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

**5**    If the notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

**6**    When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

**6.1**    Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

**6.2**    Pay or arrange for payment of any undisputed amounts.

**7**    The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

**8**    Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

**9**    The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

**10**    The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**11**    No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2 (iii), or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12    Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13    When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

14    Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15    DEFINITIONS

15.1    Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use

in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

15.2    Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

15.3    Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOW

Dual Obligee Rider attached to said Bond.

[Space is provided below for additional signatures of added parties, other than those appearing on the cover page.]

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |
| Signature: | | Signature: | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

# DUAL OBLIGEE RIDER

TO BE ATTACHED TO AND FORM PART OF BOND NO. _____ 08841777 _____

dated concurrently with the execution of the Rider, issued by the

FIDELITY AND DEPOSIT COMPANY OF MARYLAND

a _____ Maryland _____ Corporation, as Surety on behalf of

PICKUS CONSTRUCTION & EQUIPMENT COMPANY, INC. DBA THE PICKUS COMPANIES

as Principal, and in favor of

FOREST CITY MILITARY COMMUNITIES

and _____ GL-DB, LLC _____ as obligees.

IT IS HEREBY UNDERSTOOD AND AGREED that the above described bond(s) are hereby amended to include the following paragraphs.

Not withstanding anything contained herein to the contrary, there shall be no liability on the part of the Principal or Surety under this bond to the Obligees, or either of them, unless the Obligees, or either of them, shall make payments to the Principal, or to the Surety, in case it arranges for completion of the Contract upon default of the Principal, strictly in accordance with the terms of the said Contract as to payments; and shall perform all the other obligations required to be performed under said Contract at the time and in the manner therein set forth.

The aggregate liability of the Surety hereunder, to the Obligees or their Assigns is limited to the penal sum above stated, and Surety, upon making any payment hereunder, shall be subrogated to, and shall be entitled to an assignment of, all rights of the payee, either against Principal or against any other party liable to the Payee in connection with the loss which is the subject of the payment.

IT IS FURTHER UNDERSTOOD AND AGREED that nothing herein contained shall be held to change, alter, or vary the terms of the above described bond(s) except as herein before set forth.

SIGNED, SEALED, AND DATED THIS __16th__ DAY OF __February__ __2007__

PICKUS CONSTRUCTION & EQUIPMENT COMPANY, INC. DBA THE PICKUS COMPANIES

By: _____ Principal

FIDELITY AND DEPOSIT COMPANY OF MARYLAND

By: _____ Surety

Pam J. Klaren, Attorney-in-Fact

# DUAL OBLIGEE RIDER

TO BE ATTACHED TO AND FORM PART OF BOND NO. _____ 08841772 _____

dated concurrently with the execution of the Rider, issued by the

FIDELITY AND DEPOSIT COMPANY OF MARYLAND

a _____ Maryland _____ Corporation, as Surety on behalf of

PICKUS CONSTRUCTION & EQUIPMENT COMPANY, INC. DBA THE PICKUS COMPANIES

as Principal, and in favor of

FOREST CITY MILITARY COMMUNITIES

and _____ Midwest Military Communities, LLC _____ as obligee.

IT IS HEREBY UNDERSTOOD AND AGREED that the above described bond(s) are hereby amended to include the following paragraphs:

> Not withstanding anything contained herein to the contrary, there shall be no liability on the part of the Principal or Surety under this bond to the Obligees, or either of them, unless the Obligees, or either of them, shall make payments to the Principal, or to the Surety, in case it arranges for completion of the Contract upon default of the Principal, strictly in accordance with the terms of the said Contract as to payments, and shall perform all the other obligations required to be performed under said Contract at the time and in the manner therein set forth.

> The aggregate liability of the Surety hereunder, to the Obligees or their Assigns is limited to the penal sum above stated, and Surety, upon making any payment hereunder, shall be subrogated to, and shall be entitled to an assignment of, all rights of the payee, either against Principal or against any other party liable to the Payee in connection with the loss which is the subject of the payment.

IT IS FURTHER UNDERSTOOD AND AGREED that nothing herein contained shall be held to change, alter, or vary the terms of the above described bond(s) except as herein before set forth.

SIGNED, SEALED, AND DATED THIS __16th__ DAY OF __February__ 2007

PICKUS CONSTRUCTION & EQUIPMENT COMPANY, INC. DBA THE PICKUS COMPANIES

By: _____ Principal

FIDELITY AND DEPOSIT COMPANY OF MARYLAND

By: _____ Surety

Pam J. Klasen, Attorney-In-Fact

# DUAL OBLIGEE RIDER

**TO BE ATTACHED TO AND FORM PART OF BOND NO.** 08841772

dated concurrently with the execution of this Rider, issued by the

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND**

a _____ Maryland _____ Corporation, as Surety on behalf of

**PICKUS CONSTRUCTION & EQUIPMENT COMPANY, INC. DBA THE PICKUS COMPANIES**

as Principal, and in favor of

**FOREST CITY MILITARY COMMUNITIES**

and _____ Department of Navy _____ as obligees.

IT IS HEREBY UNDERSTOOD AND AGREED that the above described bond(s) are hereby amended to include the following paragraphs.

Notwithstanding anything contained herein to the contrary, there shall be no liability on the part of the Principal or Surety under this bond to the Obligees, or either of them, unless the Obligees, or either of them, shall make payments to the Principal, or to the Surety, in case it arranges for completion of the Contract upon default of the Principal, strictly in accordance with the terms of the said Contract as to payments, and shall perform all the other obligations required to be performed under said Contract at the time and in the manner therein set forth.

The aggregate liability of the Surety hereunder, to the Obligees or their Assigns is limited to the penal sum above stated, and Surety, upon making any payment hereunder, shall be subrogated to, and shall be entitled to an assignment of, all rights of the payee, either against Principal or against any other party liable to the Payee in connection with the loss which is the subject of the payment.

IT IS FURTHER UNDERSTOOD AND AGREED that anything herein contained shall be held to change, alter, or vary the terms of the above described bond(s) except as herein before set forth.

SIGNED, SEALED, AND DATED THIS 15th DAY OF February 2007.

PICKUS CONSTRUCTION & EQUIPMENT COMPANY, INC. DBA THE PICKUS COMPANIES

_____ Principal

By: _____

FIDELITY AND DEPOSIT COMPANY OF MARYLAND

_____ Surety

By: _____

Pam J. Klasen, Attorney-In-Fact

# DUAL OBLIGEE RIDER

TO BE ATTACHED TO AND FORM PART OF BOND NO. _____ 08841772

dated concurrently with the execution of the Rider, issued by the

FIDELITY AND DEPOSIT COMPANY OF MARYLAND

a _____ Maryland _____ Corporation, as Surety on behalf of

PICKUS CONSTRUCTION & EQUIPMENT COMPANY, INC. DBA THE PICKUS COMPANIES

as Principal, and in favor of

FOREST CITY MILITARY COMMUNITIES

and _____ Trimont Real Estate Advisors _____ as obligees.

IT IS HEREBY UNDERSTOOD AND AGREED that the above described bond(s) are hereby amended to include the following paragraphs.

Not withstanding anything contained herein to the contrary, there shall be no liability on the part of the Principal or Surety under this bond to the Obligees, or either of them, unless the Obligees, or either of them, shall make payments to the Principal, or to the Surety, in case it arranges for completion of the Contract upon default of the Principal, strictly in accordance with the terms of the said Contract as to payments, and shall perform all the other obligations required to be performed under said Contract at the time and in the manner therein set forth.

The aggregate liability of the Surety hereunder, to the Obligees or their Assigns is limited to the penal sum above stated, and Surety, upon making any payment hereunder, shall be subrogated to, and shall be entitled to an assignment of, all rights of the payee, either against Principal or against any other party liable to the Payee in connection with the loss which is the subject of the payment.

IT IS FURTHER UNDERSTOOD AND AGREED that nothing herein contained shall be held to change, alter, or vary the terms of the above described bond(s) except as herein before set forth.

SIGNED, SEALED, AND DATED THIS __16th__ DAY OF __February__ 2007

PICKUS CONSTRUCTION & EQUIPMENT COMPANY,
INC. DBA THE PICKUS COMPANIES

_____ Principal

By: _____

FIDELITY AND DEPOSIT COMPANY OF MARYLAND

_____ Surety

By: _____
Pam J. Klassen, Attorney-in-Fact

State of      ILLINOIS                                    } ss
County of      Cook

On February 16, 2007      , before me, a Notary Public in and for said County and State, residing therein, duly
commissioned and sworn, personally appeared   Pam J. Kinsou

**Fidelity and Deposit Company of Maryland**

known to me to be Attorney-in-Fact of
the corporation described in and that executed the within and foregoing Instrument, and known to me to be the person who
executed the said instrument in behalf of the said corporation, and he duly acknowledged to me that such corporation executed
the same.

IN WITNESS WHEREOF. I have hereunto set my hand and affixed my official seal, the day and year stated in this certificate
above.

My Commission Expires      05/23/09

"OFFICIAL SEAL"
SUSAN K. SYMONS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 05/23/09

Notary Public

its office in Baltimore, MD, in their own proper persons..

The said Assistant Secretary does hereby certify that the extract set forth on the next page hereof is a true copy of Article VI, Section 2, of the By-Laws of
said Company, and is now in force.

IN WITNESS WHEREOF, the said Vice-President and Assistant Secretary have hereunto subscribed their names and affixed the Corporate Seal
of the said FIDELITY AND DEPOSIT COMPANY OF MARYLAND this   16th   day of   February   , A.D. 2007   .

ATTEST:                                         FIDELITY AND DEPOSIT COMPANY OF MARYLAND

Gerald F. Haley                                 By:   Frank E. Martin Jr.

Gerald F. Haley      Assistant Secretary              Frank E. Martin, Jr.      Vice President

State of Maryland
County of Baltimore      } ss.

On this 16th day of   February   , A.D. 2007   , before the subscriber, a Notary Public of the State of Maryland, duly commissioned and
qualified, came Frank E. Martin, Jr., Vice President, and Gerald F. Haley, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF
MARYLAND to me personally known to be the individuals and officers described in and who executed the preceding instrument, and they each
acknowledged the execution of the same, and being by me duly sworn, severally and each for himself deposeth and saith, that they are the said
officers of the Company aforesaid, and that the seal affixed to the preceding instrument is the Corporate Seal of said Company, and that the said
Corporate Seal and their signatures as such officers were duly affixed and subscribed to the said instrument by the authority and direction of the said
Corporation.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

Stephen G. Moxley      Notary Public
My Commission Expires:   November 1, 2007

EXTRACT FROM BY-LAWS OF FIDELITY AND DEPOSIT COMPANY OF MARYLAND

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages, ...and to affix the seal of the Company thereto."

CERTIFICATE

I, the undersigned, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, do hereby certify that the original Power of Attorney of which the foregoing is a full, true and correct copy, is in full force and effect on the date of this certificate; and I do further certify that the Vice-President who executed the said Power of Attorney was one of the additional Vice-Presidents specially authorized by the Board of Directors to appoint any Attorney-in-Fact as provided in Article VI, Section 2, of the By-Laws of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 5th day of May, 1994.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed."

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the said Company, this 15th day of February 2007.



L.L. Goucher        Assistant Secretary

# EXHIBIT B



**ATTACHMENT #1**
**SUBCONTRACT COVER LETTER**
**#5236 Great Lakes Military Housing**
Great Lakes, IL

TO: ALL SUBCONTRACTORS

Re: Naval Residential Reconstruction

To Whom It May Concern:

Enclosed are two copies of your subcontract agreement along with samples of the forms needed for payment. **TO FULLY EXECUTE THIS AGREEMENT, BOTH COPIES (SIGNED AND EACH PAGE INITIALED), MUST BE RETURNED TO PICKUS WITHIN TEN (10) WORKING DAYS OF RECEIPT BY SUBCONTRACTOR ALONG WITH PERFORMANCE AND PAYMENT BOND.  AGREEMENTS NOT RETURNED WITHIN 10 DAYS MAY BE SUBJECT TO CANCELLATION.**
Pickus will sign, and return a fully execute hard copy for your files.  Do not make any alterations to this subcontract agreement without the express permission of the Project Manager.  **If revisions are agreed to, make any and all revisions in blue ink on all copies of the subcontract, and initial next to the revision.**

The following items are included as part of your subcontract agreement and need to be initialed before the contract can be fully executed and pay requests processed.

SUBCONTRACT AGREEMENT ATTACHMENTS

Attachment #2 - **PLANS AND SPECIFICATIONS**

Attachment #3 - **PROJECT SCHEDULE**

Attachment #4 - **SCOPE OF WORK**

Attachment #5 - **INSURANCE** – Insurance certificates, including those for all secondary subs, must be submitted and approved by Pickus, prior to the commencement of the work.

Attachment #6 - **SWORN STATEMENT**

Attachment #7 - **WAIVERS**

Attachment #8 - **G702 & G703** - ** Due by the 17th of Each Month**

Attachment #9 - **MATERIAL SAFETY DATA SHEETS & COMPANY SAFETY PROGRAM**

    ** Required At Jobsite At All Times
    ** Must Be Submitted Prior To Commencement Of Work

Attachment #10 - **ANTI-HARASSMENT POLICY** - **Complete and sign last page**

Attachment #11 – **DAVIS-BACON SUBCONTRACTOR PROVISIONS** – Along with certified payroll.

**The Pickus Construction Management Team for this project:**

| Name | | Contact | Email |
|---|---|---|---|
| Ed O'Malley, Project Manager | => Work: | #(847) 336-5490 | Email: eomalley@pickus.com |
| Angela Anderson, Project Accountant | => Work: | # (847) 336-5490 ext. 238 | Email: aanderson@pickus.com |

Thank you for the prompt attention given to this matter.


William J. Mayew
Director
Project Management Division

 Subcontractor

1 of 23

 Pickus



Pickus Construction & Equipment Co., Inc.
1220 Grand Ave., P.O. Box 710
Waukegan, IL 60079-0710
(847) 336-5490   Fax:  (847) 336-9913

**SUBCONTRACT AGREEMENT**

Job #6236
Code: _002444407_

This agreement is made _February 14, 2006_ by and between PICKUS CONSTRUCTION & EQUIPMENT CO., INC., 1220 Grand Avenue, P.O. Box 710, Waukegan, Illinois 60085, an Illinois Corporation, hereinafter called the CONTRACTOR, and

| | |
|---|---|
| **Industrial Fence** | **1300 S. Kilbourn Avenue, Chicago, IL  60623** |
| **(Name)** | **(Address)** |
| **Rick Hileman** | **773/521-9900 Fax;  773/521-9904** |
| **(Name of Person)** | **(Phone Number)** |

hereinafter called SUBCONTRACTOR for the project entitled _Naval Residential Reconstruction_ owned by _Forest City Military Communities_ as designed by _MACTEC Engineering and Consulting._

THIS project consists of Plans and Specifications dated _See Attachment #2_ which the subcontractor hereby agrees that he/she/it has read, reviewed, fully examined and understands all of the contract terms and conditions and the plans and specifications of the contract between _Pickus Construction & Equipment Co., Inc._ and _Forest City Military Communities._ The work is done pursuant to the drawings, specifications, and general conditions prepared by _MACTEC Engineering and Consulting_ (hereinafter referred to as Architect); said drawings, specifications, and general conditions are hereby made a part of this subcontract; and all work performed by the Subcontractor shall be in a good and workmanlike manner, and all materials furnished by the subcontractor shall be new and as specified by the drawings and specifications.

ARTICLE I - THE CONTRACT DOCUMENTS INCLUDING DOCUMENTS INCORPORATED BY RERERENCE
1.1    The Contract Documents for this subcontract consist of this agreement, the agreement between the Owner and Contractor dated _____ all drawings, specifications, addenda, modifications issued prior to the date of this contract, and attachments hereto as follows: Attachment #1 (Letter), Attachment #2 (Plans & Specifications List), Attachment #3 (Construction Schedule), Attachment #4 (Scope of Work), Attachment #5 (Insurance), Attachment #6 (Sworn Statement), Attachment #7 (Waivers) Attachment #8 (G702 & G703), Attachment #9 (MSDS), and Attachment #10 (Anti-Harassment Policy).

This Subcontract Agreement is referred to herein as the "Subcontract". The Contract Documents are incorporated by reference and are part of this Subcontract between Contractor and Subcontractor. The Contract Documents for this Subcontract consist of this Subcontract (Articles 1-16) and any Exhibits attached hereto, and except as provided in this Article 2 below, all Contract Documents forming the contract between the Owner and the Contractor, including by way of example and not of limitation, the contract between the Owner and the Contractor, the conditions of the contract between the Owner and Contractor (General, Supplementary and other conditions), Drawings, Specifications, all Addenda, and all Modifications issued prior to the date hereof. All of the above documents are a part of this Subcontract and are incorporated herein by reference, and shall be available for inspection by the Subcontractor upon his request.  In resolving conflicts, if any, between or among this Subcontract and other Contract Documents, the parties resolve such conflicts as follows:

A.    With regard to payment, arbitration, mediation, or facilitation provisions in any other Contract Documents, (i) no such provision shall be deemed a part of this Subcontract, (ii) no conflict between the terms of this Subcontract and any other Contract Documents has been incorporated herein, and (iii) no payment, arbitration, mediation, or facilitation provisions in any other Contract Documents shall be considered for purposes of interpretation of this Subcontract.

B.    The Contract Documents are to be construed together so that all of the work as indicated anywhere therein relating to Subcontractor's Work is to be done by the Subcontractor.

C.    In the event there is a conflict with a provision contained in Articles I through 16 of this Subcontract and any Contract Documents other than the Contract Documents forming the contract between Owner and Contractor, then the document containing the provision imposing on Subcontractor the highest duties and standards of diligence and quality shall govern.  However, if it cannot be determined which provision imposes such higher standards and duties, then the provision in the Contract Documents forming the contract between the Owner and Contractor shall govern.

D.    In the event there is a conflict between a provision contained in Articles I through 16 of this Subcontract and any Contract Documents other than the Contract Documents forming the contract between Owner and Contractor, then this Subcontract shall govern.

E.    In relation to time limits, where the Contract Documents and this Subcontract conflict, the shorter time period shall govern. Further, in relation to time limits, when a time limit in the Contract Documents is applicable to Contractor, then the Subcontractor's time limit is the lesser of the time specified in this Subcontract or three (3) days less than the time provided in the Contract Documents.  To the extent the Contract Documents specify a time of three (3) days or less, then Subcontractor shall be required to act immediately.

ARTICLE II - SCOPE OF WORK
2.1    The subcontractor shall furnish all material, labor, tools and equipment for the _Security Fencing_ work shown on the drawings and described in the specifications, Division 1 General Requirements, General Conditions, and Specification Section 02290 with the following

____ Subcontractor                           2 of 24                           ____ Pickus

stipulations: Provide and install Security Fencing in accordance with plans and specifications listed in Attachment #2, also included is the scope of work listed in Attachment #4. All work to be performed per construction schedule in Attachment #3. It is the intent of the award of this subcontract to furnish to the Owner a complete operable and satisfactory installation, regardless of minor errors and omissions in any the Contract Documents for work covered in this Agreement.

ARTICLE III - CONTRACT SUM AND PAYMENT

3.1    The Subcontractor agrees to perform the work in this contract for the sum of  **Nine Hundred Seventy-Eight Thousand Four Hundred Forty-Five & NO/100-------- ($978,445.00)** Dollars.

3.2    Subcontractor shall present PAY ESTIMATE REQUEST, invoices, and required back up material, in DUPLICATE, to the Contractor no later than the 17th of the month. PAY ESTIMATE REQUEST shall be submitted on the Contractor's Billing Form, in accordance with the project payment procedure attached hereto. Payment requests completed after that date are processed for the following month.

3.3    Monthly progress payments will be made to the Subcontractor in the amount of 95% percent of the value, in proportion to subcontract prices, of the work done by the Subcontractor and included in any progress payments made to the Contractor under the principal contract and within ten (10) normal working days of receipt of payment by Contractor from the Owner. Provided, however, that before making such payment the Contractor shall have the option to demand and receive from the Subcontractor proper releases or waivers of lien (whichever are applicable) together with an affidavit and evidence setting forth that all labor, materials, appurtenances, etc., used and incorporated in and about said work or stored on the site thereof have been fully paid for. Final payment, including retainage, shall be made to the Subcontractor after final completion and acceptance of the Principal Contract and final payment thereof by the Owner to the Contractor and upon the Subcontractor furnishing the Contractor with releases or waivers of lien in full (whichever are applicable) together with an affidavit and evidence setting forth that all labor, materials, equipment, appurtenances, etc., used and incorporated in said work have been fully paid for. Subcontractor warrants that title to all of the Subcontract work that is covered by an Application for Payment will pass to the Owner no later than the time of payment. Subcontractor further warrants that upon submittal of an Application for Payment all of the Subcontract work for which Certificates for Payment have been previously issued and payments received from Contractor shall be free and clear of liens, claims, security interests or other encumbrances in favor of the Subcontractor, its sub-subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Subcontract work.

Notwithstanding the foregoing, Subcontractor shall have the right to contest, in good faith and with diligence, the validity of any such claim or lien, but only if Subcontractor shall give to Contractor and to the Owner such security as may be deemed reasonably satisfactory to Contractor and to the Owner to assure payment thereof and to prevent any sale or foreclosure of the Owner's property. Further, upon a determination of such claim or lien, Subcontractor shall immediately pay any settlement or judgment, together with all proper costs and charges, and shall obtain a duly executed final waiver of lien, and a duly executed release of lien in recordable form if a claim for lien has been recorded.

3.4    The rate of retainage shall not exceed the percentage retained from Contractor's payment by Owner for Subcontractor's work. Contractor, in its sole discretion, may withhold from all or part of any progress payment, the final payment, or both, any amount it deems necessary to fully protect and insure itself against any actual or potential liability or damage directly or indirectly relating to the Contract, or Subcontractor's breach or threatened breach of any other contract.

3.5    Payment of any progress payment or final payment to Subcontractor is specifically agreed not to constitute or imply acceptance by Contractor or Owner of any portion of the Work. Occupancy or use of the Project by Owner or Contractor shall not constitute acceptance of the Work.

3.6    Changes in the contract sum shall not be made unless Contractor and Subcontractor agree in writing to such change, except as provided in Article VIII, Paragraph 8.7.

ARTICLE IV – CONTRACTUAL RELATIONSHIPS

4.1    The Subcontractor shall be bound to the Contractor by the terms  of this Subcontract and of the Contract Documents and shall assume toward the Contractor all the obligations and responsibilities which the Contractor, by the Contract Documents, assumes toward the Owner, and shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, by the Contract Documents, has against the Owner, insofar as applicable to this Subcontract, provided that where any provision of the Contract Documents between the Owner and Contractor is in conflict with any provision of this Subcontract, this Subcontract shall govern subject to the provisions of Article 1.

4.2    No Work under this Subcontract shall be further subcontracted in whole or in part without the written consent of the Contractor. Subcontractor agrees that if any portion of the Work hereunder is further subcontracted, the sub-subcontractor, of any tier, shall be bound by the terms of this Subcontract so far as applicable to its Work. If a sub-subcontractor of any tier does exist, there is no contractual relationship between the sub-subcontractor and the Contractor.

4.3    Subcontractor shall be required to bind contractually all sub-subcontractors, or any person who by written contract or otherwise performs any work for the Project through Subcontractor ("Sub-subcontractor") to all obligations, responsibilities and duties of Contractor for work performed by Subcontractor including but not limited to indemnity, insurance, payment obligations, and all duties required by the general conditions, supplementary conditions and all Divisions of the specifications applicable to Subcontractor's scope of work. Subcontractor shall specifically require all Sub-subcontractors to name the Owner, and if required by contract the Architect, and the General Contractor intended third party beneficiaries of all rights of the Subcontractor in the contract between the Subcontractor and the Sub-subcontractor including but not limited to the insurance requirements, indemnity obligations, and waiver by Subcontractor of any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under Worker's Compensation Act, disability benefit acts or other employee benefit acts. Any failure by Subcontractor to bind contractually all

_____ Subcontractor                                  3 of 24                                  _____ Pickus

Sub-subcontractors to all the obligations, responsibilities and duties of Contractor for work performed by Subcontractor including but not limited to indemnity, insurance, payment obligations and all duties required by the general conditions, supplementary conditions, and all Divisions of the specifications applicable to Subcontractor's scope of work shall constitute an event of default, and Subcontractor shall be liable for all direct and consequential damages caused by Subcontractor's default.

## ARTICLE V - PERFORMANCE AND PAYMENT BONDS

5.1    The Subcontractor will be required by the Contractor to provide payment and performance bonds from a surety acceptable to the Contractor. The Contractor shall have the right, in its sole discretion, to require the Subcontractor to furnish bonds from its surety in the same form and text as the bonds that are furnished by the Contractor's surety.

The amount of the bonds shall be in the total amount of the Subcontract price. (The Subcontractor shall pay all premiums for the bonds and shall be reimbursed for such premiums through its first draw.)

5.2    The Contractor reserves the right to cancel or modify this Agreement upon failure of the Subcontractor to provide required Bonds within (10) ten days after request by the Contractor.

5.3    The Contractor may, at his option, require the checks for payment to this contract be issued jointly to the Subcontractor and any material supplier connected with this Contract.

## ARTICLE VI- INSURANCE

6.1    The Subcontractor shall maintain, for the protection and benefit of Owner, Contractor, Architect/Engineer, Subcontractor and any other additional insured's listed in the Contract Documents, during the progress of the Work, including warranty and additional work provided for, by, or at the direction of Contractor, insurance against claims which may arise from or in connection with the performance of the Work by Subcontractor, its agents, representatives, employees, Sub-subcontractors or suppliers and for one (1) year after substantial completion or for warranty period whichever is longer, and if required to return during the warranty period, Insurance with the minimum limits and coverages as shown below or, if higher, the requirements set forth in the Contract Documents with a responsible insurer with the Best Guide Rating of A-XIII or better.

6.2    WORKERS' COMPENSATION including Occupational Disease insurance meeting the statutory requirements of the State in which work is to be performed together with a Broad Form All States Endorsement and containing Employers' Liability insurance in an amount of at least $500,000. The Subcontractor will have attached to its policy a waiver of subrogation in favor of Pickus Construction & Equipment Co., Inc.

6.3    COMMERCIAL GENERAL LIABILITY insurance providing coverage at least as broad as the ISO CG00-01 (ed. 10-93) and providing limits for Bodily Injury, Personal Injury and Property Damage of at least $1,000,000 each occurrence. If any aggregate applies, it shall apply on a per project basis. The policy must provide, Premises-Operations, Elevators, Independent Contractors, Broad Form Property Damage, Contractual Liability, Products and Completed Operations coverages (which shall be maintained in force for a period of two years after substantial completion of the Project, or for such longer period of time as is described in the Contract Documents).

1.    The policy must be endorsed to include the Owner, the Contractor and Architect as ADDITIONAL INSUREDS on a form, which is acceptable to the Owner. The Additional Insured protection afforded under the policy shall include coverage under both premises and operations and completed operations hazards. This form shall be equivalent to ISO CG2010 Form B-11/85 Edition, or the ISO CG2026, or the combination of the ISO CG2010 Form B 93 Edition and the ISO CG2037 endorsements. The Owner may approve alternative forms but those must be attached to the certificate of insurance and reviewed prior to acceptance.

2.    Subcontractor acknowledges that it is purchasing insurance for the liability of Owner and Contractor arising from Subcontractor's Work. The insurance afforded Owner and Contractor and others as additional insureds must be endorsed as primary and non-contributory to any other insurance afforded Owner, Contractor or others. In addition, Subcontractor shall maintain an umbrella liability policy providing the same coverages and with the same additional insureds as the basic policy in the following amounts as applicable:

| | |
|---|---|
| *Electrical, HVAC, Plumbing, Steel Erection and Elevator Subcontractors* | $5,000,000 |
| *All Other Subcontractors* | $1,000,000 |

A waiver of subrogation in favor of Pickus Construction & Equipment Co., Inc. shall also be included. In addition, Subcontractor shall maintain an Umbrella Liability policy providing the same coverages and with the same ADDITIONAL INSUREDS as the basic policy in the amount of $5,000,000.

6.4    COMPREHENSIVE AUTOMOBILE LIABILITY on occurrence basis covering all Owned, Non-Owned and Hired Vehicles for limits of liability $1,000,000 per occurrence (Combined Single Limit) of Bodily Injury & Property damage.

6.5    A CERTIFICATE OF INSURANCE on an approved form must be delivered to Pickus Construction & Equipment Co., Inc. and must state coverage will not be altered, canceled, or allowed to expire without thirty (30) days written notice by registered mail to Pickus Construction & Equipment Co., Inc. A copy of the additional insured endorsement, from an acceptable insurance company, must follow the certificate within 30 days. Failure to comply with this requirement will result in withholding of any payments due the subcontractor.

6.6    EQUIVALENT INSURANCE COVERAGE must be obtained from each of your Subcontractors or Suppliers, if any, before permitting them on the site of the project. Otherwise, their protection must be included within your insurance policies.

6.7    It is understood and agreed that the insurance coverages and limits, required above, shall not limit the extent of the Subcontractor's responsibilities and liabilities specified within the Contract Documents or by law.

6.8  It is understood and agreed authorization is hereby granted to Pickus Construction & Equipment Co., Inc. to withhold payments to the Subcontractor until a properly executed Contract, approved Schedule of Values, and Certificate of Insurance, and all requested endorsements providing insurance as required herein, accompanied by a signed contract or purchase order are received by Pickus Construction & Equipment Co., Inc.  No construction shall start unless received.

6.9  The insurance afforded to Owner and Contractor, as an additional insured on Subcontractor's policies is primary insurance over any other valid or collectible insurance that Owner or Contractor may have with respect to the loss. Owner's and Contractor's insurance shall be excess over Subcontractor's policies and the amount of Subcontractor's insurance company's liability shall not be reduced by the existence of any other insurance.

6.10 Contractor and Subcontractor waive all rights against each other for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph or other property insurance applicable to the work.  Subcontractor shall require from sub-subcontractors by appropriate written agreements, similar waivers in favor of Contractor and Subcontractor.  The policies shall provide such waivers of subrogation by endorsement or otherwise.

6.11 SUBCONTRACTOR'S SAFETY, INDEMNITY AND INSURANCE REQUIREMENTS set forth herein shall be included and part of any change order issued by Pickus Construction & Equipment co., Inc. to Subcontractor as though fully set forth in said purchase order to subcontract.

6.12 In the event that Pickus Construction allows the Subcontractor to use Pickus' crane or other equipment on the project, Subcontractor agrees to indemnify, hold harmless and defend Pickus Construction & Equipment Co., Inc., its employees and officers, from any and all lawsuits and damages in connection with or arising from the Subcontractor's use of the crane and/or equipment except such claims or lawsuits that arise from the sole negligence of Pickus Construction & Equipment Co., Inc.

ARTICLE VII - INDEMNIFICATION, ASSIGNMENT, SUBCONTRACTING INDEMNIFICATION
7.1  To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless Pickus Construction & Equipment Co., Inc., the Owner, Architect and others required in the Contract Documents, and their agents, invitees and other employees, from and against all claims including but not limited to claims for economic loss and claims (whether based upon contract or tort law) for defective construction, damages, demands, liabilities, losses including but not limited to economic loss, and consequential economic loss and expenses, including but not limited to attorneys' fees, arising out of or resulting from Subcontractor's performance of its work under the Contract Documents.  This indemnification agreement shall extend beyond the completion of the Project for the maximum amount of time permitted by law.  This indemnification agreement shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under Worker's Compensation Act, disability benefit acts or other employee benefit acts.

7.2  The Subcontractor will not assign or sublet any portion of this subcontract without the written consent of the Contractor.  Any such assignment without such consent is void and the assignee in such case shall acquire no rights against the Contractor.

ARTICLE VIII - COMMENCEMENT AND PROSECUTION OF THE WORK
8.1  The Subcontractor agrees to provide as required and at no additional cost all drawings, samples, schedules, submittals, test results, certificates and other documentation necessary for acceptance by the Owner and Contractor and performance of the Subcontractor's portion of the work.  All submittals must be made in a timely manner so as to facilitate the construction schedule which is hereby made a part of the Contract as Attachment 3.  Failure to follow such schedule will constitute breach of contract by Subcontractor.

8.2  Subcontractor shall prepare, review, approve and submit to Contractor for review and approval by Owner, all shop drawings, product samples, test results, installer's instruction, certificates, construction schedules, submittal schedules, material deliver schedules and all other submittals required by the Contract with reasonable promptness and in such sequence as to cause no delay to the Project.  Review and approval of such submittals by Contractor or Owner shall not relieve Subcontractor of liability for any deviations from the requirements of the Contract.

8.3  The Subcontractor represents that he is familiar with the physical conditions of the site and can provide both labor and material necessary to complete the work within the schedule required by the Contactor.  Subcontractor's failure to notify Contractor within three (3) working days of the date on which Subcontractor either knew or should have known of inconsistencies, errors, or omissions in the Contract shall bar any claims by Subcontractor arising out of or relating thereto.  Any decision or adjustment by Subcontractor without a written determination by Contractor shall be at Subcontractor's sole risk and expense.  Any and all decisions by Owner, relative to any inconsistency, error or omission shall be binding on Subcontractor.

8.4  The Subcontractor agrees to prosecute his work and the several parts thereof at such times and in such order as the Contractor considers necessary to keep the same sufficiently in advance of the other parts of the work and to avoid any delay in the completion of the construction as a whole.  The Subcontractor shall reimburse the Contractor for any loss, damage or extra expense paid or incurred by the Contractor which is due to Subcontractor's failure to deliver any and all materials as required, or to properly perform any and all work in keeping with the progress of the general construction work, or to properly perform any term, covenant or condition contained in this Subcontract, or which is due to the breach of any of the provisions of this subcontract.  It is further agreed that if the Subcontractor fails or refuses to proceed with his work as directed by the Contractor, or fails to perform said work in accordance herewith, in whole or in part, or fails to perform any term, covenant or condition contained in this Agreement, the Contractor may upon forty-eight (48) hours written notice to the Subcontractor's last known address, take any steps he deems advisable to secure necessary labor or material by contract or otherwise, and may take over all the Subcontractor's equipment, materials, etc., and may prosecute the work to completion.  If the Contractor deems this procedure necessary for proper conduct of the work, all monies expended therefore shall be deducted from the contract price herein stated, and if such expenditures exceed the amount otherwise

due to the Subcontractor whereunder, the Subcontractor agrees to pay Contractor on demand the full amount of such excess, together with interest thereon at the rate of ten (10) percent per annum until paid.

8.5    Contractor shall have the right to make changes in the Schedule of Work and to determine and decide all matters relative to the timely performance and completion of the Work including, but not limited to, the time, order and priority in which the various portions of the Work shall be performed. Subcontractor agrees to comply with changes in the Schedules of Work without additional compensation. All changes to the Schedule of Work shall be submitted to Subcontractor in advance of the required performance.

8.6    The Work to be performed under this contract shall be commenced and, subject to, authorized adjustments, and shall be substantially completed not later than the date indicated on schedule as revised as noted below. The Contractor agrees to start the work upon letter of award and shall execute the work with diligence and dispatch so as to maintain such schedules and milestones as established by Pickus Construction & Equipment Co., Inc.

8.7    The Contractor may at any time by written order make changes in, additions to and omissions from the Work to be performed under this Subcontract. Such changes shall be ordered and the Contract Sum adjusted in accordance with the provisions of the Contract Documents.

8.8    In case of a bulletin revision or other change in the Work of this Subcontract for which a proposal is requested, the Subcontractor shall submit its proposal for such change to the Contractor within seven days after receipt of request, unless a different time is granted by the Contractor or indicated elsewhere in the Contract Documents. If a longer time is required, the Subcontractor shall so advise the Contractor at once, requested an extension of time. In the event Contractor and Subcontractor cannot agree on a price with regard to changes in the Work, Contractor my direct Subcontractor to perform the additional Work, and any disputes regarding the amount charged by Subcontractor for such Work shall be resolved by arbitration or litigation as provided for herein. In no event shall Subcontractor be permitted to charge amounts higher than its standard hourly rates for labor and costs for material consistent with other such costs incurred.

8.9    The Subcontractor further agrees to complete portions and the whole of the work in accordance with the project schedule. The Subcontractor is cautioned that schedules and milestones are subject to review and revision, and such revisions will be made available for the Subcontractor's information at the jobsite office of Pickus Construction & Equipment Co., Inc. Any such revision shall not be grounds for additional costs. It is the responsibility of the Subcontractor to attend job meetings, keep itself informed of any revisions and conform to any such revisions. The subcontractor acknowledges multiple mobilizations may be required and will be provided at no additional compensation.

ARTICLE IX – BACHARGES AND SUBCONTRACTOR CHARGES FOR WORK NOT SEPARATELY REIMBURSED BY OWNER.

9.1    In the event Contractor performs Work which is the obligation of the Subcontractor, including the correction of safety violations, either at Subcontractor's request or as a result of Subcontractor's failure to perform such Work, Contractor shall backcharge Subcontractor for labor, material and equipment plus Contractor's administrative and overhead costs. Except in the case of emergency, or in the event that in the judgment of Contractor the increased cost resulting from delay requires Contractor to perform Work which is the obligation of the Subcontractor in a shorter period of time, Contractor shall give Subcontractor forty-eight (48) hours notice prior to performing Work which is the obligation of Subcontractor at Subcontractor's expense pursuant to this Article.

9.2    In the event Subcontractor shall perform Work not included in the Subcontract Work herein, which is ordered by Contractor and for which the Owner is not reimbursing Contractor, the Subcontractor shall charge Contractor for labor, material and equipment as set forth in this Article below.

     9.2.1    Labor shall be billed at no more than one hundred ten (110%) percent of the Direct Personnel Expense. Direct Personnel Expense is defined as the salary and/or wage of the employee or employees who actually perform the Work involved for the period of such Work, and the cost of the mandatory and customary benefits such as statutory employee benefits, insurance, vacation, pension and similar benefits, and the portion of premium for public liability insurance measured by payroll.

     9.2.2    Material shall be billed at no more than one hundred five (105%) percent of actual cost, less all trade discounts, rebates and refunds, including refunds arising from the return or sale of surplus material and equipment.

     9.2.3    Equipment rental shall be billed at the actual rate charged by the equipment supplier, and in the case of equipment owned by Contractor or Subcontractor, at a charge equal to no more than eighty-five (85%) percent of the published rates in Associated Equipment Distributors Compilation of Nationally Averaged Rages, current edition at the date of this Subcontract.

9.3    In the event that Contractor bachcharges Subcontractor in accordance with the terms of this Article, then Contractor shall have the right to deduct the amounts of such charges from the amounts payable to Subcontractor in connection with any of Subcontractor's pending Applications or subsequent applications for payment submitted.

ARTICLE X - GENERAL CONDITIONS

10.1    The Subcontractor shall be responsible for all lines, dimensions and elevations required to perform this work. Pickus Construction & Equipment Co., Inc. may furnish, erect or provide equipment, appurtenances and devices, motorized or otherwise, for its use to complete its Contract with the Owner. Should the Subcontractor use such items, the Subcontractor agrees to insure against either any claims of injury or damage caused by items while in its care, custody or control naming Pickus Construction & Equipment Co., Inc. as an insured party. Liability limits shall be the same as in Article 5.3 above. Physical damage insurance against damage to the items themselves shall be on a "Replacement Cost" basis waiving subrogation against Pickus Construction & Equipment Co., Inc. All pertinent data set forth on the plans, drawings or details are to be field verified by the Subcontractor and shall not be deemed, warranted or represented as correct by the Contractor. Any and all conflicts, errors, and omissions discovered by Subcontractor to be immediately notified to Contractor in writing.

_____ Subcontractor            6 of 24            _____ Pickus

10.2  The Subcontractor shall take all reasonable safety precautions with respect to his work and shall comply with all safety measures initiated by the Contractor and with all applicable laws, ordinances, rules, regulations and orders of any public authority including but not limited to OSHA regulations for the safety of persons or property in accordance with the requirements of the Contract Documents. Subcontractor shall comply with said requirements, standards and regulations, and require and be directly responsible for compliance therewith on the part of its said agents, employees, material men and subcontractors; and shall directly receive, respond to, defend, and be responsible to all citations, assessments, fines or penalties which may be incurred by reason of its failure on the part of its agents, employees, material men or subcontractors to so comply. The Subcontractor shall report within two (2) days to the Contractor any injury to any of the Subcontractor's employees at the site.  If the subcontractor fails to immediately commence compliance with such safety duties, or commence cleanup duties within twenty-four hours after receipt from contractor of written notice of noncompliance, the contractor may implement such safety or cleanup measures without further notice and deduct the cost thereof from any amounts due or to become due the subcontractor.

10.3  If any part of the Subcontractor's work depends for proper execution or results, upon the work of any other contractor or supplier, Subcontractor shall inspect the work of the other contractor or supplier and promptly report to the General Contractor any defects in such work, or the performance thereof that adversely affects the proper execution, the obtaining of the desired results of the sublet work.  Subcontractor's failure to inspect and report any such defects prior to prosecution of work shall constitute an acceptance of the other contractors' or material men's work as suitable and properly performed.

10.4  Subcontractor shall, at its own expense, procure all required bonds and licenses, and pay all fees and charges, and give all notices necessary to the due and lawful prosecution of the sublet work.  Subcontractor shall comply with the requirements of any deeds and right-of-way easement restrictions, and any permit requirement, and any instruction or regulations of any local, State, or Federal Government Agency or Authority, and with the requirements of any one having the right to control how any portion of the sublet work is to be performed, provided, however, that the sublet work shall be performed to the satisfaction of the General Contractor and Owner.

10.5  Subcontractor shall comply with all applicable laws, ordinances, rules, codes and regulation of any governmental agency having jurisdiction, and with all terms and conditions of applicable permits, certificates, leases, restrictions, easements or dedications, and Subcontractor shall indemnify and hold harmless General Contractor and Owner from any fine, penalty, loss, damage or expense resulting from Subcontractor's failure to comply therewith.  Subcontractor shall certify that all work is performed in compliance with the provisions of the Fair Labor Standards Acts.
   (a)  The wages to be paid to all laborers and mechanics, if any, employed in connection with the Subcontractor Agreement as amended, shall not be less than the prevailing wage rates for corresponding classes of laborers and mechanics employed on construction of a similar character in the locality in which the work is to be performed as determined by the Secretary of Labor.  Subcontractor shall provide evidence that all laborers and mechanics have been paid at rates not less than the prevailing wages as determined by the Secretary of Labor.

10.6  Subcontractor shall be responsible for clean-up and removal from the job site of all rubbish, debris, and excess construction materials resulting from his work from the work area as directed by the Field Manager.  Subcontractor will also clean up to the satisfaction of the Contractor all dirt, grease, marks, etc., from walls, floors, fixtures, etc., as a result of the execution of this subcontract.  Failure or refusal to perform this clean-up within forty-eight (48) hours of written notice from the Contractor will give the Contractor the right to proceed with said clean-up.  If the debris or rubbish is causing a safety hazard, as determined by the Contractor, which requires immediate attention, and the Subcontractor ignores or refuses to respond after receiving verbal notice, then the Contractor will also have the right to proceed with said clean-up.  If the Contractor does the clean-up for the Subcontractor, a fixed fee of $100.00/man/hour and $500.00/dumpster will be assessed for doing this work.

10.7  No alcoholic beverages are allowed on the job site.

10.8  The Subcontractor is responsible for proper storage of his material and may not store said material on the site without express approval of the Contractor.

10.9  The Owner will maintain the specified Builder's Risk Insurance with a $ 25,000.00 deductible.  Should any loss of any portion of the Subcontractor's work occur, the Subcontractor shall be responsible to pay for the amount up to the deductible limit.  Prior acceptance of or payment for the items lost or damaged does not relieve the Subcontractor of this responsibility.

10.10 If Subcontractor should use any tools or equipment belonging to Contractor, he accepts and uses same without warranty of any nature as to their condition or suitability.

10.11 Subcontractor is required to be signatory to union contracts of those trades applicable to performing the work under this contract.

10.12 ACCOUNTING RECORDS
10.12.1  The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract, and the accounting and control systems shall be satisfactory to the Owner.  The Owner and the Owner's accountants shall be afforded access to, and shall be permitted to audit and copy, the Contractor's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Contract, and the Contractor shall preserve these for a period of three (3) years after final payment, or for such longer period as may be required by law.

10.12.2  The Owner reserves the right to audit, examine and copy, at reasonable times and places, all Records (as defined below) of the Contractor, Subcontractors, lower tier subcontractors, suppliers, and vendors pertaining to the Work of this Project during the construction period and for a period of three (3) years after completion date of construction or longer if required by law; provided, however, that the Owner shall not audit lump-sum subcontractors or lower tier subcontracts except to confirm the accuracy of records

Subcontract #: 5236IN

and information provided by the Contractor to the Owner.

10.12.3   Records subject to audit, examination, and copying shall include but not be limited to accounting records (hard copies as well as computer readable data if it can be made available), written policies and procedures, subcontract files (including proposals of successful and unsuccessful bidders, bid recaps, etc.) original estimates, estimating worksheets, correspondence, change order files (including documentation covering negotiated settlements), backcharge logs and supporting documentation, general ledger entries detailing cash and trade discounts earned, insurance rebates and dividends, books, papers, documents, subscriptions, recordings, agreements, purchase orders, leases, contracts, commitments, arrangements, notes, daily diaries, superintendent reports, drawings, receipts, vouchers and memoranda, and any and all other agreements, sources of information and matters that may in the Owner's judgment have any bearing on or pertain to any matters, rights, duties or obligations under or covered by any Contract Document (all the foregoing herein referred to as "Records").

10.12.4   The Contractor shall require all Subcontractors, insurance agents, and material suppliers (Payees) to comply with the provisions of this Article by insertion of the requirements hereof in a written contract agreement between the Contractor and the applicable payee. Such requirements will also apply to Subcontractors and lower tier subcontractors. The Contractor will cooperate fully and will cause all Related Parties and all the Contractor's Subcontractors to cooperate fully in furnishing or in making available to the Owner from time to time whenever requested in an expeditious manner any and all such information, materials, and data.

10.12.5   If an inspection or audit by the Owner of the Records reveals an overcharge, the Contractor shall pay the Owner upon demand an amount equal to such overcharge, as reimbursement for said overcharge, and shall also, in the event the amount of such overcharge (in any single instance or in the aggregate with all other overcharges for the Project) is two and one-half percent (2.5%) of the Cost of the Work or greater, reimburse the Owner for the administrative expenses incurred by the Owner in conducting the audit.

ARTICLE XI – DELAYS AND EXTENSIONS OF TIME AND DAMAGES ON ACCOUNT OF DELAY

11.1     To the extent not modified elsewhere in this Subcontract, the Subcontractor shall be entitled to an extension of time in which to perform its Work to the extent that Contractor actually obtains an extension of time from the Owner under the Contract Documents relating to Subcontractor's work, provided that Subcontractor has made a written request for such extension within fourteen (14) days as provided in Article 15 or a shorter time if so specified in the Contract Documents.

11.2     In the event that the Contract Documents provide for liquidated damages in the event of delay, the Subcontractor shall be responsible for such liquidated damages to the extent that it is the cause or a contributing cause of the delay. If there is or omissions of other Subcontractors and/or Contractor are contributing causes of the same delay caused by the acts or omissions of the Subcontractor, then the liquidated damages shall be equitably prorated between the parties contributing to such delay.

11.3     If the Subcontractor shall fail to complete its Work on time, resulting in loss or damage to the Contractor, whether or not liquidated damages are called for in the Contract Documents, the Contractor shall be entitled to recover any damages caused by the Subcontractor's breach, including overhead, profit, extended general conditions, actual attorney fees, etc.

11.4     In the event Subcontractor is hindered in the commencement or progress of the Work, and claims damages as a direct and proximate consequences thereof (including, but not limited to, extended general conditions, overhead, profit, overtime, interest, supervision or other costs or profits whatsoever), the Subcontractor shall not assert such claims against the Contractor or Owner, and as to Contractor and Owner, Subcontractors' claims of delay damages are hereby waived. Subcontractor's sole and exclusive remedy regarding claims for such delay damages shall be to pursue such claims against any subcontractor(s) on the job site which caused the delay, and with regard to such claims asserted against Subcontractor by any other subcontractor(s), Subcontractor hereby waives the defense of absence of contractual privity, and hereby assumes liability to other subcontractor(s) arising out of Subcontractor's actions resulting in such delay and claim.

11.5     In the event any delay in the completion of Subcontractor's Work or scheduling of Subcontractor's Work, including the sequence of that Work which is attributable to Contractor, its other sub-contractors or suppliers and it is determined by arbitration or a court of competent jurisdiction, as the case may be, that Contractor is liable to Subcontractor for such delay despite the other terms of this Subcontract, then Contractor shall be liable to Subcontractor for liquidated damages in the amount of One Hundred and 00/100 ($100.00) Dollars per day, maximum, which shall include all of Subcontractor's claims, including by way of example, delays, compressions of schedule, lost productivity, lost profits, lost opportunities, out of sequence work, overhead, crowding, tools, equipment, rentals, etc.

ARTICLE XII – CLAIMS FOR ADDITIONAL COMPENSATION OR EXTENSION OF TIME

12.1     If the Subcontractor shall have any claims for additional compensation or extension of time, he shall make all such claims promptly in writing to the Contractor in accordance with the Contract Documents. Claims must be made within 14 days, or such lesser time stipulated in the Contract Documents, after occurrence of the event giving rise to the claim. Notwithstanding the foregoing, in the event the Contract Documents require Contractor to submit claims or give notice within a period less than 12 days, Subcontractor shall make its claim or give its notice at least three (3) days before Contractor is required to take action.

12.2     The parties hereto are aware of the possibility of increases in the prices of labor or materials necessary to perform the Work required by this Subcontract and/or the difficulty in obtaining same. It is accordingly understood that no claim shall be made by the Subcontractor for an increase in price. The Subcontractor shall at no time claim that the Subcontract amount was predicated on obtaining materials from any particular source of supply. If it be thereafter claimed that the Subcontract finds that the price of labor and materials herein provided for has increased to any extent, for any reason whatsoever, including (but without limiting the generality of the source or causes of such possible increases), strikes, forced or voluntary agreements between employer and employee, present or future Federal, State, County or Municipal regulations, enactments, statutes, decrees, present or future

____ Subcontractor                                    8 of 24                                    ____ Pickus

codes, trade association agreements; whether the same be brought by statute, agreement or otherwise, freight rates, or any change of economic conditions whatsoever, it is understood than any and all risks increase in the price of labor and materials have been contemplated by the Subcontractor and have been taken into full consideration in arriving at the Subcontract amount. The Subcontractor shall at no time claim such increase even though the Subcontractor has been brought into a period of increased labor and material cost by reason of delays of Contractor.

## ARTICLE XIII — TERMINATION

13.1 Should the Subcontractor fail to prosecute the Work or any part thereof with promptness and diligence or fail to perform any provisions of this Subcontract, or go into liquidation or enter into a composition with its creditors or become insolvent, Contractor, without prejudice to any other remedy it may have, after two days written notice to Subcontractor, may terminate Subcontractor's right to proceed with the Work or such part of the Work as to which such defaults have occurred.

13.2 In the event of such termination, the Contractor may take possession for the purpose of completing the Work included in this Subcontract, of all materials, tools, scaffolding, machinery, equipment, and appliances thereon and to employ or contract with any other person or persons to finish the Subcontractor's Work and to provide the materials therefore, or the Contractor may itself provide any labor or materials and perform any part of the said Work. Further, Contractor, at its sole option, may require Subcontractor to assign to Contractor any subcontracts between Subcontractor and parties Subcontractor has contracted with to perform a portion of the Work. In case the Contractor shall so take possession of the said Work, or employ or contract with any other person or persons to finish the same, the Subcontractor shall not be entitled to receive any further payment under this Subcontract until the said Work including any warranty Work, shall be wholly finished and the warranty period has expired, at which time if the unpaid balance of the amount to be paid on this Subcontract shall exceed the expense incurred by the Contractor in finishing the Work, and payment of all costs, including actual attorney fees, then such unpaid balance, after deducting any loss or damage by reason of the Contractor's taking possession of the Work, including damages for delays, shall be paid to Subcontractor by the Contractor, but only to the extent of the costs incurred by the Subcontractor prior to termination of the Subcontract. In the event the expense, compensation, costs and damages incurred in finishing the said Work, including all actual attorneys' fees and legal costs, exceeds the unpaid balance, the Subcontractor and its sureties, if any, shall be liable for and shall pay the excess to the Contractor. The failure of the Contractor to exercise any of the rights given it hereunder shall not excuse the Subcontractor from compliance with provisions of this Subcontract nor prejudice the rights of the Contractor to recover damages for the Subcontractor's default of any of the terms of this Subcontract.

13.3 Contractor shall be entitled to terminate this Subcontract for convenience. In such event, the final payment due Subcontractor upon termination for convenience shall be limited to (i) the amount due and unpaid for Work actually utilized in the Project; (ii) those materials that were purchased by Subcontractor specifically for this Subcontract that cannot be returned; and (iii) along with other direct out of pocket costs directly related to the Work as of termination. Subcontractor shall not be entitled to incidental or consequential damages, damages for overhead, lost profit or any other costs or damages. At Contractor's sole option, Contractor may direct Subcontractor to deliver any unutilized materials related to the Project or another jobsite, so long as Contractor pays for such materials.

13.4 If Contractor terminates this agreement for reasons other than Contractor's convenience, and it is subsequently determined that Contractor's basis for termination was unjustified or a breach of this Subcontract, then such termination shall be deemed a termination for convenience and Subcontractor's damages for such breach shall be limited to the amounts due pursuant to that provision.

## ARTICLE XIV - ARBITRATION

14.1 Without regard to whether the Contract Documents require arbitration, Contractor may, in its sole discretion elect to have all claims, disputes and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof, decided by arbitration. In the event Contractor elects arbitration, the arbitration shall be conducted in accordance with (i) the same procedure as provided in the Contract Documents with respect to disputes between the Owner and the Contractor except that a decision by the Architect shall not be a condition precedent to arbitration; or (ii) if the Contract Documents do not contain an arbitration clause, or if Contractor so elects in its sole discretion despite the existence of such a clause, to conduct arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect, however, a mandatory arbitration or facilitation clause appearing in the Contract Documents, if any, shall not be incorporated herein by referenced under any circumstances. Subcontractor is deemed to have agreed to arbitration or litigation upon election by Contractor. The arbitration shall be conducted and decided by a panel of three arbitrators. The arbitration shall be statutory and the award of the arbitration panel shall be enforceable by any court of competent jurisdiction. Subcontractor shall provide Contractor the opportunity for a time period of not less than thirty (30) days to audit Subcontractor's files and documents, which shall be a condition precedent to the Subcontractor's right to file a claim of arbitration or litigation against Contractor. Subcontractor agrees that any of Subcontractor's claims must be filed within one hundred eight (180) days of the Final Completion Date, and any longer statutes of limitations provided under state or federal law are hereby waived.

14.2 This Article shall not be deemed a limitation on any rights or remedies which the Subcontractor may have under any Federal or State construction lien laws or under any applicable labor and material payment bonds unless such rights or remedies are expressly waived by it.

14.3 Written notices that become necessary hereunder shall be deemed given upon deposit of the same in the U.S. Mail as prepaid, registered or certified mail addressed to the parties at the addresses listed below.



____Subcontractor

____Pickus

Subcontract #: 5236IN

14.4  Should Contractor employ an attorney to enforce any of the provisions of this contract or collect damages for the breach of any provision of this contract by Subcontractor, Subcontractor agrees to pay contractor all reasonable costs, charges, expenses, and reasonable attorney's fees, expended or incurred as a result.

ARTICLE XV – WARRANTIES

15.1  The Subcontractor agrees to pay all costs of repairing and/or replacing all defective material and/or workmanship for a period of one (1) year after acceptance by the Owner and Contractor as reflected by date of final completion certified by Architect (or such period as is specified in the Principal Contract and/or specifications). Upon failure of the Subcontractor to act promptly after notification, the Contractor may provide a remedy for the failure at the expense of the Subcontractor.

15.2  As part of the completion procedure and prior to final acceptance of the project by the Owner, the Subcontractor may be required to repair and/or rework some portion of the work covered in this subcontract. Failure of the Subcontractor to promptly comply with the Contractor's request to complete this work will result in the Contractor prosecuting said work at the expense of the Subcontractor. The general contractor, upon 48 hours notification to the subcontractor, shall execute all outstanding punch list work at the cost of the subcontractor including General Contractor's overhead and profit. Completing the job on time is of the essence.

ARTICLE XVI  - CONTEXT

16.1  This Subcontract Agreement consists of pages 1 to 9, inclusive.  IN WITNESS WHEREOF, the parties hereto set their hands and seals the day and year first above written, and this Subcontract Agreement shall be binding upon the heirs, administrators, successors, and assigns of said parties.

ACCEPTED

**Industrial Fence, Inc.**
SUBCONTRACTOR

By: (Name and Title)

DATE: 2/15/06

SEAL (If corporation)

ACCEPTED

Pickus Construction & Equipment Co., Inc.
CONTRACTOR

By  (Name and Title)
William J. Mayew, Director
Project Management Division

DATE:

Seal (if Corporation)

Subcontract #: __5236IN__

## Attachment #4
## SCOPE OF WORK

### SECURITY FENCE

Supply all labor, material, and equipment necessary to provide a security fence at the above listed locations prior to construction activities

- Provide a security fence ten (10') feet high with poles located eight (8) feet on center embedded three (3) feet deep.
- The fence fabric shall be of a suitable gauge to provide security to the satisfaction of the owner and the posts will be of an inch diameter to adequately support the fence and fabric under any weather conditions that occur.
- The fence will have a dust screen of 80% opaque value and better.
- Gates will be of a swing type and allow for a twenty four (24) feet of clear opening.
- The up keep and maintenance of the fence will remain with Industrial Fence, Inc. except where it has been damaged by construction.
- Locations of the fence, gates and service points,(fire hydrants) will be determined in the field with a representative of Industrial Fence, Inc., The Pickus Companies, and Forrest City.
- The relocation of the fence will be determined in the field with a representative of Industrial Fence, Inc., The Pickus Companies, and Cambridge Homes.
- Removal of all fencing and materials will be by others.


Subcontractor

11 of 24


Pickus

**Industrial Fence**
**Attachment #4**
**Naval Residential Reconstruction**

| Location | Quantity | Unit | Cost | Total |
|---|---|---|---|---|
| **Forrestal Village** | | | | |
| New Placement | 23,200.00 | LF | $ 14.95 | $ 346,840.00 |
| Truck Gates | 13.00 | EA | $ 650.00 | $ 8,450.00 |
| Relocation | 24,700.00 | LF | $ 8.30 | $ 205,010.00 |
| Relocate Truck Gates | 13.00 | EA | $ 300.00 | $ 3,900.00 |
| | | | | |
| **Halsey Village** | | | | |
| New Placement | 6,300.00 | LF | $ 14.95 | $ 94,185.00 |
| Truck Gates | 2.00 | EA | $ 650.00 | $ 1,300.00 |
| | | | | |
| **Nimitz Village** | | | | |
| New Placement | 1,600.00 | LF | $ 14.95 | $ 23,920.00 |
| Truck Gates | 2.00 | EA | $ 650.00 | $ 1,300.00 |
| | | | | |
| **Fort Sheridan** | | | | |
| New Placement | 8,800.00 | LF | $ 14.95 | $ 131,560.00 |
| Truck Gates | 8.00 | EA | $ 650.00 | $ 5,200.00 |
| Relocation | 8,200.00 | LF | $ 8.30 | $ 68,060.00 |
| Relocate Truck Gates | 8.00 | EA | $ 300.00 | $ 2,400.00 |
| | | | | |
| **Glenview** | | | | |
| New Placement | 3,600.00 | LF | $ 14.95 | $ 53,820.00 |
| Truck Gates | 2.00 | EA | $ 650.00 | $ 1,300.00 |
| Relocation | 0.00 | LF | $ 8.30 | $ - |
| Relocate Truck Gates | 0.00 | EA | $ 300.00 | $ - |
| | | | | |
| **Hospital Cove / Mainside** | | | | |
| New Placement | 2,000.00 | LF | $ 14.95 | $ 29,900.00 |
| Truck Gates | 2.00 | EA | $ 650.00 | $ 1,300.00 |
| | | | | $ 978,445.00 |



Subcontract #: 5236IN

**Attachment #5**
**INSURANCE COMPLIANCE PROGRAM**
PLEASE READ THE FOLLOWING INSTRUCTION CAREFULLY:

1.  **Prior to any work being performed in the field, it is mandatory that each subcontractor provide** Pickus Construction & Equipment Company with acceptable Certificates of Insurance and Additional Insured Protection.  All subcontractors must provide and maintain the required insurance coverage in accordance with the contract requirements and PC&E Safety Indemnity and Insurance Request.  The subcontractor shall obtain, pay for and keep in force at all time during the performance of work and for two (2) additional years after Substantial Completion of the project under the Subcontract Agreement, the required insurance coverages set forth in contract documents.

2.  **PLEASE NOTE:**  Your Certificate must name the following as additional insureds:

    **GENERAL CONTRACTOR:**    Pickus Construction & Equipment Company, Inc.
                            1220 Grand Avenue
                            Waukegan, IL  60085

    **OWNER:**                Midwest Military Communities, LLC
                            Terminal Tower, 50 Public Square, Suite 1170
                            Cleveland, OH  44113

    **DESIGN/BUILDER:**       GL-DB, LLC
                            Terminal Tower, 50 Public Square, Suite 1170
                            Cleveland, OH  44113

    Forest City Residential Group, Inc.         Forest City Enterprises, Inc.
    Terminal Tower, 50 Public Square, Suite 1170    Terminal Tower, 50 Public Square, Suite 1170
    Cleveland, OH  44113                        Cleveland, OH  44113

    Forest City Residential Management, Inc.    Naval Facility Engineering Command
    Terminal Tower, 50 Public Square, Suite 1200    Southern Division
    Cleveland, OH  44113                        2155 Eagle Drive
    Attn:  Angelo Pimpas, Co-President          PO Box 190010
                                                North Charleston, SC  29419-9010
                                                Attn:  Midwest PPV – Business Agreements Manager

    Naval Facilities Engineering Command        TriMont Real Estate Advisors, Inc.
    Attn:  Washington Navy Yard                 Monarch Tower
    1322 Patterson Ave., SE, Suite 1000         3424 Peachtree Road, SE, Suite 2200
    Washington, DC  20374-5065                  Atlanta, GA  30326
    Attn:  Special Ventures Acquisition Programs –    Attn:  John Gass
    Navy Midwest

3.  Please forward your completed original Certificate of Insurance to **Project Accountant, Pickus Construction & Equipment Company, P.O. Box 710, Waukegan, IL  60079-0710**

---

**YOU WILL NOT BE PERMITTED TO START WORK ON THE**
**JOBSITE WITHOUT AN ACCEPTABLE INSURANCE**
**CERTIFICATE ON FILE FOR THIS JOB**

---

| | |
|---|---|
| Subcontractor:  Industrial Fence, Inc. | Project:    Navy Residential Reconstruction |
| Address:  1300 S. Kilbourn Avenue | Location:  Forrestal Village, Great Lakes |
|                Chicago, IL  60623 | Halsey Village, Great Lakes |
| | Nimitz Village, Great Lakes |
| | Fort Sheridan, Highland Park |
| Start Date: | Glenview Naval Air Base, Glenview |
| | Great Lakes Naval Training Center at |
| | Hospital Cove and Mainside |

_____Subcontractor                    13 of 24                         _____Pickus

# ACCORD    CERTIFICATE OF INSURANCE

**ISSUE DATE**
2/06

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS
NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND
EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

Thilman & Fillippini

One East Wacker Drive

Suite 1800

Chicago, IL 60601

(312)/527-9500

Safer Subcontractor
1234 OSHA Way
Anytown, IL 60001

## COMPANIES    AFFORDING    COVERAGE

COMPANY A    A Rated Financial Class VII
LETTER

COMPANY B    A.M. Best Rating
LETTER

COMPANY C
LETTER

COMPANY D
LETTER

COMPANY E
LETTER

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LT | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | ALL LIMITS IN THOUSANDS | |
|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY<br>COMMERCIAL GENERAL LIABILITY<br>CLAIMS MADE  OCCUR<br>OWNER'S & CONTRACTOR'S PROT.<br>PER PROJECT AGGREGATE | Policy # | From | To | GENERAL                                AGGREGATE<br>PRODUCTS-COMP/OPS              AGGREGATE<br>PERSONAL & ADVERTISING INJURY    EACH<br>OCCURRENCE<br>FIRE    DAMAGE    (Any   one   fire)<br>MEDICAL EXPENSE (Any one person) | $ 2,000<br>$ 1,000<br>$ 1,000<br>$ 1,000<br>$    50<br>$     5 |
| A | AUTOMOBILE LIABILITY<br>ANY AUTO<br>ALL OWNED AUTOS<br>SCHEDULED AUTOS<br>HIRED AUTOS<br>NONOWNED AUTOS<br>GARAGE LIABILITY | Policy # | From | To | COMBINED<br>SINGLE        $ 1,000<br>LIMIT<br>BODILY<br>INJURY        $<br>(Per person)<br>BODILY<br>INJURY        $<br>(Per accident)<br>PROPERTY<br>DAMAGE        $ | |
| A | EXCESS LIABILITY<br>UMBRELLA FORM<br>OTHER THAN UMBRELLA FORM | Policy # | From | To | EACH                  AGGREGATE<br>$5,000              $ 5,000 | |
| A | WORKER'S COMPENSATION<br>AND<br>EMPLOYER'S LIABILITY | Policy # | From | To | STATUTORY<br>$ 500   (EACH ACCIDENT)<br>$ 500   (DISEASE - POLICY LIMIT)<br>$ 500   (DISEASE - EACH EMPLOYEE) | |
| | OTHER | | | | | |

## DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/RESTRICTIONS/ AND SPECIAL ITEMS

The Pickus Companies/General Contractor, GL-DB, LLC/Design/Builder, Midwest Military Communities, LLC/Owner are added by endorsement to the general liability policy as additional insured using ISO FORM B# CG2010. The endorsement shall cover Premises and Operations and Completed Operations for Job #5236 Navy Great Lakes  and any subsequent purchase or change orders. Furthermore, Contractual Liability Coverages contained in the above certified General Liability Policy which provides coverage for the indemnification agreement contained in the contract documents.  A PER PROJECT AGGREGATE APPLIES TO THE GENERAL LIABILITY LIMITS.

### CERTIFICATE HOLDER

Pickus Construction & Equipment Co., Inc.
1220 W. Grand Avenue
PO BOX 710
Waukegan, IL 60085
Attention: Angela Anderson

### CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELED, ALTERED, OR ALLOWED TO EXPIRE, THE ISSUING COMPANY WILL MAIL 30 DAYS WRITTEN NOTICE BY REGISTERED MAIL TO CERTIFICATE HOLDER NAMED TO THE LEFT.

AUTHORIZED REPRESENTATIVE

Subcontract #: __52361N__

## ATTACHMENT #6
## SWORN STATEMENT

A.  Sworn Statements should be submitted within ten days of the signing of this contract, and must be approved prior to any pay requests.

B.  Itemize all phases of work into material, labor, and equipment components.

C.  List all suppliers and/or subcontractors for values of $500.00 and above.

D.  Sworn statement values must correspond to values listed on all waivers.

E.  If any material or work has not been bought out, then reference as Not Let. Once a supplier or secondary subcontractor is known, a revised sworn statement with supporting details is required with associated values.

F.  A sample sworn statement has been attached for your convenience.

_____Subcontractor

Pickus

**SWORN STATEMENT FOR CONTRACTOR AND SUBCONTRACTOR TO OWNER**

State of Illinois
County of Lake

THE AFFIANT,                                                                              being first duly sworn, on oath deposit
And says he is (1)
contract with (2)
owner for (3)

on the following described premises in said County, to-wit:

That, for the purposes of said contract, the following premises have been contracted with, and have furnished, or are furnishing and preparing materials for,
and have done or are doing labor on said improvement.  That there is due and to become due to them, respectively, the amounts set opposite their names for
materials or labor as stated.  That this statement is made to said owner for the purpose of procuring from said owner                                        Partial-Final
Payment on said contract, and is a full, true and complete statement of all such persons, and of the amounts paid, due and to become due them.

(1) A member of the firm of, or officer of the corporation of naming same.  If a subcontractor so state and name the subcontractor. (2) Name of owner or owner.
(3) What the contract or subcontract is for  (4) Partial or Final payment

| NAME AND ADDRESS | CONTRACT FOR | AMOUNT OF CONTRACT | TOTAL PREVIOUS REQUESTS | AMOUNT OF THIS REQUEST | BALANCE TO COMPLETE |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| TOTALS |  |  |  |  |  |

|  |  |
|---|---|
| TOTAL AMOUNT REQUESTED |  |
| LESS RETAINAGE |  |
| NET AMOUNT EARNED |  |
| AMOUNT OF PREVIOUS PAYMENTS |  |
| AMOUNT DUE THIS PAYMENT |  |
| BALANCE TO BECOME DUE |  |

It is understood that the total amount paid to date plus the amount requested in this application shall not exceed
                              % of the cost of work completed to date
I agree to furnish Waivers of Lien for all materials under my contract when demanded.
                                                                                          Signed

Subscribed and sworn to before me this                                    day of                              2001

                                                                                          Notary Public

Subcontract #: __5236IN_____

## ATTACHMENT #7
## WAIVERS

A.  Contractor's affidavit portion of lien waiver must be fully completed.

B.  Itemization categories and values must be consistent with sworn statement.

C.  Waivers for all suppliers, and/or 2nd tier subcontractors must be attached to the primary waiver.

D.  A sample partial and final waiver has been attached for your convenience.

E.  Anyone not listed on the waivers will not be allowed to work onsite.


____Subcontractor

Pickus

STATE OF ILLINOIS } SS

COUNTY OF

Cty # _____

Loan # _____

TO WHOM IT MAY CONCERN:

WHEREAS the undersigned has been employed by _____

to furnish _____

for the premises known as _____

of which _____ is the owner.

THE undersigned, for and in consideration of _____

($_____) Dollars, and other good and valuable considerations. the receipt whereof is hereby acknowledged, do(es) hereby waive and release any and all lien or claim of, or right to, lien, under the statutes of the State of Illinois, relating to mechanics' liens, with respect to and on said above-described premises, and the improvements thereon, and on the material, fixtures, apparatus or machinery furnished, and on the moneys, funds or other considerations due or to become due from the owner, on account of labor services, material, fixtures, apparatus or machinery furnished to this date by the undersigned for the above-described premises.

Given under _____ hand _____ and seal _____ this

_____ day of _____ , 19____ .

Signature and Seal: _____

**NOTE:** All waivers must be for the full amount paid. If waiver is for a corporation, corporate name should be used, corporate seal affixed and title of officer signing waiver should be set forth; if waiver is for a partnership, the partnership name should be used, partner should sign and designate himself as partner.

## CONTRACTOR'S AFFIDAVIT

STATE OF ILLINOIS } SS

COUNTY OF

TO WHOM IT MAY CONCERN:

THE undersigned, being duly sworn, deposes and says that he is _____

_____ of the _____

who is the contractor for the _____ work on the

building located at _____

owned by _____

That the total amount of the contract including extras is $_____ on which he has received payment of

$_____ prior to this payment. That all waivers are true, correct and genuine and delivered unconditionally and that there is no claim either legal or equitable to defeat the validity of said waivers. That the following are the names of all parties who have furnished material or labor, or both, for said work and all parties having contracts or sub contracts for specific portions of said work or for material entering into the construction thereof and the amount due or to become due to each, and that the items mentioned include all labor and material required to complete said work according to plans and specifications:

| NAMES | WHAT FOR | CONTRACT PRICE | AMOUNT PAID | THIS PAYMENT | BALANCE DUE |
|-------|----------|----------------|-------------|--------------|-------------|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| TOTAL LABOR AND MATERIAL TO COMPLETE |  |  |  |  |  |

That there are no other contracts for said work outstanding, and that there is nothing due or to become due to any person for material, labor or other work of any kind done or to be done upon or in connection with said work other than above stated.

Signed this _____ day of _____ , 19____ .

Signature: _____

Subscribed and sworn to before me this _____ day of _____ , 19____

# FINAL WAIVER OF LIEN

STATE OF ILLINOIS  } SS
COUNTY OF

Cty # _____

Loan # _____

TO WHOM IT MAY CONCERN:

WHEREAS the undersigned has been employed by _____

to furnish _____

for the premises known as _____

of which _____ is the owner,

The undersigned, for and in consideration of _____
(S_____) Dollars, and other good and valuable consideration, the receipt whereof is hereby acknowledged, do(es) hereby waive and release any and all lien or claim of, or right to, lien, under the statutes of the State of Illinois, relating to mechanics' liens, with respect to and on said above-described premises, and the improvements thereon, and on the material, fixtures, apparatus or machinery furnished, and on the moneys, funds or other considerations due or to become due from the owner, on account of labor, services, material, fixtures, apparatus or machinery heretofore furnished, or which may be furnished at any time hereafter, by the undersigned for the above-described premises.

Given under _____ hand _____ and seal _____ this

_____ day of _____ , 19_____ .

Signature and Seal: _____

**NOTE:** All waivers must be for the full amount paid. If waiver is for a corporation, corporate name should be used, corporate seal affixed and title of officer signing waiver should be set forth; if waiver is for a partnership, the partnership name should be used, partner should sign and designate himself as partner.

# CONTRACTOR'S AFFIDAVIT

STATE OF ILLINOIS  } SS

COUNTY OF
TO WHOM IT MAY CONCERN:

THE undersigned, being duly sworn, deposes and says that he is _____

_____ of the _____
who is the contractor for the _____ work on the
building located at _____
owned by _____
That the total amount of the contract including extras is $_____ on which he has received payment of
$_____ prior to this payment. That all waivers are true, correct and genuine and delivered unconditionally and that there is no claim either legal or equitable to defeat the validity of said waivers. That the following are the names of all parties who have furnished material or labor, or both for said work and all parties having contracts or sub contracts for specific portions of said work or for material entering into the construction thereof and the amount due or to become due to each, and that the items mentioned include all labor and material required to complete said work according to plans and specifications:

| NAMES | WHAT FOR | CONTRACT PRICE | AMOUNT PAID | THIS PAYMENT | BALANCE DUE |
|-------|----------|----------------|-------------|--------------|-------------|
|       |          |                |             |              |             |
|       |          |                |             |              |             |
|       |          |                |             |              |             |
|       |          |                |             |              |             |
|       |          |                |             |              |             |
|       |          |                |             |              |             |
|       |          |                |             |              |             |
| TOTAL LABOR AND MATERIAL TO COMPLETE | | | | | |

That there are no other contracts for said work outstanding, and that there is nothing due or to become due to any person for material, labor or other work of any kind done or to be done upon or in connection with said work other than above stated.

Signed this _____ day of _____ , 19_____ .

Signature: _____

Subscribed and sworn to before me this _____ day of _____ , 19_____

Subcontract #: __5236IN__

## ATTACHMENT #8
### G702 & G703

A.   Monthly pencil draft pay applications are due by the 20th of the month.

B.   Pay applications and schedule of values should be submitted on AIA forms G702 or G703.

C.   Failure to invoice by the 20th of the month could result in your company being left out of that month's draw.

D.   The G703 (Schedule of Values) must be filled out and returned with your contract.

E.   The G702 (Application for Payment) must be approved prior to payment.

F.   For your convenience samples of AIA forms G702 and G703 have been provided in the sample forms packet included in your contract.

_Subcontractor

Pickus

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702

PAGE ONE OF    PAGES

TO (Owner):

PROJECT:

APPLICATION NO:

PERIOD FROM:

TO:

Distribution to:
- ☐ OWNER
- ☐ ARCHITECT
- ☐ CONTRACTOR
- ☐

ATTENTION:

CONTRACT FOR:

CONTRACT DATE:

ARCHITECT'S
PROJECT NO:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in connection with the Contract
Continuation Sheet, AIA Document G703, is attached.

**The present status of the account for this Contract is as follows:**

ORIGINAL CONTRACT SUM .................................. $

Net change by Change Orders ............................. $

CONTRACT SUM TO DATE .................................. $

TOTAL COMPLETED & STORED TO DATE ........... $
(Column G on G703)

RETAINAGE ........ % ....................................... $
or total in Column I on G703

TOTAL EARNED LESS RETAINAGE ...................... $

LESS PREVIOUS CERTIFICATES FOR PAYMENT ...... $

CURRENT PAYMENT DUE ............................... $

### CHANGE ORDER SUMMARY

| | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Change Orders approved in previous months by Owner | | |
| TOTAL | | |
| Approved this Month | | |
| Number | Date Approved | | |
| TOTALS | | |
| Net change by Change Orders | | |

The undersigned Contractor certifies that to the best of his knowledge,
information and belief the Work covered by this Application for
Payment has been completed in accordance with the Contract Docu-
ments, that all amounts have been paid by him for Work for which
previous Certificates for Payment were issued and payments received
from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By: _____    Date: _____

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site obser-
vations and the data comprising the above application, the Architect
certifies to the Owner that the Work has progressed to the point
indicated; that to the best of his knowledge, information and belief,
the quality of the Work is in accordance with the Contract Docu-
ments, and that the Contractor is entitled to payment of the AMOUNT
CERTIFIED.

AMOUNT CERTIFIED .................................... $
(attach explanation if amount certified differs from the amount applied for.)

ARCHITECT:

By: _____    Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contrac
named herein. Issuance, payment and acceptance of payment are without prejudice to a
rights of the Owner or Contractor under this Contract.

State of:
Subscribed and sworn to before me this
Notary Public:
My Commission expires:

County of:
day of        , 19

AIA DOCUMENT G702 • APPLICATION AND CERTIFICATE FOR PAYMENT • APRIL 1978 EDITION • AIA® • © 1978
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

## AIA DOCUMENT G703

### CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NUMBER:
APPLICATION DATE:
PERIOD FROM:
TO:
ARCHITECT'S PROJECT NO:

PAGE    OF    PAGES

| A | B | C | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | | WORK COMPLETED | | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G÷C) | BALANCE TO FINISH (C−G) | RETAINAGE |
| | | | Previous Applications | This Application | | | | | |
| | | | | Work in Place | Stored Materials (not in D or E) | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

AIA DOCUMENT G703 • CONTINUATION SHEET • APRIL 1978 EDITION • AIA® • © 1978
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE. N.W., WASHINGTON, D.C. 20006

G703 — 1978

Subcontract #:  5236IN

## ATTACHMENT # 9
## SAFETY REGULATIONS

February 14, 2006

To:     All Subcontractors
        Major Suppliers

RE:     Naval Residential Reconstruction

Gentlemen:

All subcontractors on the above referenced job must develop and maintain a written hazard communication program at this work site.

A Material Safety Data Sheet (MSDS) is required to be on site for every chemical and material used on this site. Ensure that a copy of all required MSDS sheets are in possession of the Pickus job site Superintendent and your job site Foreman. Failure to comply may result in OSHA fines totaling thousands of dollars.

If you have any questions regarding OSHA compliance, MSDS sheets, etc., I can be reached at (847) 417-3558.

Sincerely,

Robert Schiller
Senior Risk Manager
Pickus Construction & Equipment Co., Inc.
1220 Grand Avenue / P.O. Box 710
Waukegan, IL  60079-0710
(847) 336-5490  Fax:  (847) 336-9913

Subcontract #: __52361N__

## ATTACHMENT # 9
### SAFETY REGULATIONS

*To Our Subcontractors:*

The construction industry is one of the most hazardous industries in the Country. Every construction company currently has an obligation to have a Safety Program which addresses all of the hazards in the work place. At Pickus Construction & Equipment Co., Inc., we place safety first and require all of our subcontractors contribute daily to maintaining safety awareness, and work in a safe manner.

The following list of safety rules are to be adhered to while on our construction sites.

1.  Work in accordance with all applicable OSHA standards is mandatory. All subcontractors must be familiar with the Pickus Safety Program including The Hazard Communication portion which explains the use or MSDS sheets, if you do not understand what MSDS are ask your superintendent as soon as possible.

2.  Accidents or injuries no matter how minor, must be reported immediately to the job foreman. All unsafe conditions must be reported to the jobsite Superintendent immediately.

3.  Hard hats are to be worn by all personnel while on the jobsite. This includes visitors, suppliers, engineers and inspectors.

4.  Protective eyewear shall be worn while performing the following activities: demolition work, hammering, sawing, chipping, welding, grinding, working in dusty places, handling of chemicals, and during all operations where eye injuries may result, per the Pickus Eye Protection Policy.

5.  Ear protections in the form of ear muffs or approved ear plugs will be worn on all high-noise level jobs.

6.  Approved respirators are to be used when conditions warrant.

7.  Safety shoes are required for all employees. All work shoes must be in serviceable condition. Canvas street shoes are expressly prohibited.

8.  Gloves shall be worn when handling rough edge or abrasive material when the work subjects hands to lacerations, puncturing or burns.

9.  Employees shall be required to wear proper clothing. Employees are also cautioned not to wear loose clothing, rings, bracelets and jewelry around moving equipment and power tools. Working without a shirt or in shorts or cut off pants is strictly prohibited.

10. Lifelines and harnesses are to be used on swinging scaffolding or when fall hazards of 6 feet or more exist.

11. The use of gasoline in prohibited for the cleaning or equipment or tools or for starting of fires. Small quantities of gasoline must be transported only in approved labeled red (metal) safety containers. Gasoline engines must be shut off when refueling.

12. "No Smoking" rules must be observed. Do not smoke in refueling areas or around combustible materials. Tampering with or unauthorized removal of fire extinguishers from assigned locations is prohibited.

13. Compressed air or oxygen is not to be used for dusting off clothes or cleaning equipment. Also, oxygen and acetylene tanks must be stored a minimum of 20 feet apart. Tanks must be capped and securely tied off.

14. No employee, other than the operator, will ride on any trucks, loaders, back hoes, or other moving equipment unless specifically authorized to do so. The operating of any company equipment without proper authorization is prohibited.

15. No employee shall operate any machinery, equipment or tool unless he has been instructed to do so by his immediate foreman or supervisor and is familiar with all details of operation.

16. All switches or drives on machinery shall be shut down and locked out before cleaning, greasing, oiling, or making adjustments or repairs.

17. All machine guards shall be kept in place while machinery is in operation. Tampering with machine guards is prohibited. All guards are to be promptly replaced after any repair work that necessitated their removal has been completed.

 ___Subcontractor                                       18 of 24                                    Pickus

Subcontract #: __52361N__

## ATTACHMENT # 9
### SAFETY REGULATIONS

18. When necessary to work on electrically driven machinery, the disconnect switch for controlling the machine shall be padlocked in the open or off position by the worker or workers performing the job. The lock or locks should not be removed until work has been completed and the area has been cleared.

19. High voltage electrical equipment and transmission lines are to be approached and handled only by persons qualified and authorized to do so.

20. No employee will walk or work under suspended loads. No equipment operator will carry loads over a fellow employee. All personnel are required to remain out of the path of suspended loads during crane lifting operations.

21. Hand tools shall not be used for any other purpose than that intended. All damaged tools or worn parts should be reported to the foreman for replacement or repair.

22. No employee shall enter a trench or excavation that has not been properly sloped or shored. Nor will he/she enter a trench or excavation without proper egress and without someone present on the surface.

23. No employee will remove a cover or guard rail for any floor or wall opening without specific approval. All subcontractors are responsible for the immediate replacement of any safety rails or caution tape removed by the subcontractor. If the subcontractor fails to comply, an appropriate back charge will be assessed.

24. Employees are not permitted to use or possess any intoxicants on company property or to be under the influence of any intoxicants or drugs per the Subcontractor's Drug and Alcohol policy.

25. Tools, equipment, machinery and work areas are to be maintained in a clean and safe manner. Defects and unsafe conditions shall be reported to your foreman, or superintendent. Example: remove nails in lumber that could cause an immediate puncture wound.

26. Horseplay - including reckless driving of vehicles or equipment will not be tolerated. Always use seat belts.

27. Common sense, health and sanitation rules must be observed for the welfare and consideration or other employees.

28. Proper lifting procedure (back as straight as possible and with knees bent) shall be practiced. If the load is too heavy to lift safely, get help.

29. All subcontractors are required to use GFI protected power source or the assured grounding program when utilizing electric cords or equipment on all Pickus jobsites. Do not plug in any cord missing a ground prong.

30. No subcontractor's employee shall work on scaffold erected without the guidance of a competent person. All scaffolds must be equipped with guardrails, toe boards, full planking, full cross bracing and acceptable ladder access. Unstable objects such as buckets, boxes, cement block, step ladders and pallets is strictly forbidden.

31. All subcontractors are required to have a Tool Box Safety Meeting for jobsite personnel. Attendance must be documented and a copy provided to the Pickus Superintendent on-site.

**I acknowledge by my signature below that I have read the required safety regulations, and will accept and adhere to them.**

Subcontractor: __Industrial Fence, Inc.__

Project: __Naval Residential Reconstruction__

Location: __1300 S. Kilbourn Ave., Chicago IL 60623__

By: _____

Date: _____

### ATTACHMENT # 10

_____Subcontractor

19 of 24

Pickus

Subcontract #: 52361N

## ANTI-HARASSMENT POLICY

1. **Statement of Philosophy**

    Pickus Construction and Equipment Co., Inc. maintains a policy that all of its employees have a right to be free from harassment based on race, color, sex, national origin, disability, age of 40 or older, or sexual harassment. Sexual harassment, whether verbal, physical or environmental, is unacceptable in our Company and will not be tolerated. As part of our policy all employees must comply with the following anti-harassment policy.

2. **Definition of Sexual Harassment**

    For the purposes of this policy, sexual harassment is defined as:

    Unwelcome sexual advances, requests for sexual favors, sexual jokes or inferences, and other verbal or physical conduct of a sexual nature when:

    A.     Submission to such conduct is made a term or condition of employment (either explicitly or implicitly).

    B.     Such conduct is used as the basis for employment-related decisions affecting the individual.

    C.     Such conduct unreasonably interferes with the individual's work performance or creates an intimidating, hostile, or offensive environment.

    Examples of sexual harassment may include, but are not limited to: unwanted sexual advances; demands for sexual favors in exchange for favorable treatment or continued employment; repeated sexual jokes, flirtations, advances or propositions; verbal abuse of a sexual nature; graphic or verbal commentary about an individual's body, physical appearance, sexual habits, sexual prowess or sexual deficiencies; leering, whistling, touching, pinching, assault, coerced sexual acts or suggestive insulting, obscene comments or gestures; and displays in the workplace of sexually suggestive objects or pictures. Furthermore, offensive graffiti on bathroom walls, port-a-potties or anywhere on a job site that is sexually or racially offensive or offensive to anyone's religion, national origin, race, age, handicap disability or other protected status is prohibited.

3. **Definition of Disability**

    To be eligible, an employee must, within the meaning of the Americans with Disabilities Act, be a disabled employee who can perform the essential functions of the job with or without a reasonable accommodation.

4. **Individuals Covered Under the Policy**

    This policy covers all employees. Pickus Construction and Equipment Co., Inc. will not tolerate, condone or allow harassment based on race, color, sex, national origin, disability, age of 40 or older, or sexual harassment whether engaged in by fellow employees, supervisors, executives, or by customers or other nonemployees who conduct business with this Company. The Company encourages reporting of all incidents of prohibited harassment, regardless of who the offender may be.

5. **Reporting a Complaint**

    We encourage an individual who believes he or she is being harassed to firmly and promptly notify the offender that his or her behavior is unwelcome. We also recognize, however, that power and status disparities between an alleged harasser and a target may make such a confrontation impossible.



Subcontractor

Pickus

Subcontract #: __52361N_____

## ATTACHMENT # 10
### ANTI-HARASSMENT POLICY

1. ### Where to Report a Complaint

In the event you believe such conduct exists, you should contact one of the following persons at the Company:

1. Your immediate job site Supervisor or foreman
2. Any other job site Supervisor
3. Project Manager
4. Safety Director
5. Bob Witucki (847) 336-5490

The Company recognizes that while complaints of prohibited harassment need to be kept confidential for the protection of all parties involved, there must be a thorough investigation and appropriate disciplinary or other actions taken when the facts show that harassment has occurred.

2. ### Description of Misconduct

An accurate record of objectionable behavior or misconduct is needed to resolve a formal complaint. Verbal reports of prohibited harassment must be reduced to writing by either the complainant or the individual(s) designated to receive complaints, and be signed by the complainant. Individuals who believe they have been or currently are being harassed should maintain a record of objectionable conduct in order to effectively prepare and corroborate their allegations.

3. ### Time Frame for Reporting Complaint

If you feel you are being harassed, please report your complaint promptly so that we may respond quickly. Due to the sensitivity of these problems and because of the emotional toll such misconduct may have on an individual, no specific time frame will be instituted for reporting harassment complaints. Late reporting of complaints will not in and of itself preclude us from taking remedial action.

4. ### Protection Against Retaliation

Employees making complaints will not be retaliated against or punished in any way. It is the policy of the Company to maintain a workplace free from harassment and to that end all complaints will be carefully investigated and seriously considered.

F. ### Investigating the Complaint

1. ### Confidentiality

Any employee who presents a complaint of such misconduct is assured that a prompt and confidential investigation will be conducted. Confidentiality will be maintained throughout the investigatory process to the extent practical and appropriate under the circumstances. Therefore, information and records about the allegation of harassment will be shared only with those who need to know about it.

2. ### Investigation Process

After a complaint has been received it is our intent to conduct a prompt, thorough and impartial investigation. In pursuing the investigation, the investigator will try to take the wishes of the complainant under consideration, but will also thoroughly investigate the matter as he/she sees fit, keeping the complainant informed as to the status of the investigation. The objectives of the investigation are to:

- Confirm the name and position of the complainant;

- Identify the alleged harasser;

- Thoroughly ascertain all facts that explain what happened;

_Subcontractor

Pickus

Subcontract #:  52361N

## ATTACHMENT # 10
## ANTI-HARASSMENT POLICY

- Determine the frequency/type of alleged harassment and, if possible, the dates and locations where alleged harassment occurred;

- Identify individuals, if any, who observed the alleged harassment;

- Ask the individual how he/she responded to the alleged harassment;

- Determine whether the harassed individual consulted anyone else about the alleged harassment and take note of who else knows and their response to the disclosure;

- Develop a thorough understanding of the professional relationship, degree of control and amount of interaction between the alleged harasser and complainant;

- Determine whether the alleged harasser has carried out any threats or promises directed at the complainant; or if any harassment by a supervisor has culminated in a tangible employment action;

- Query whether the complainant knows of or suspects that there are other individuals who have been harassed by the alleged harasser;

- Determine whether the complainant informed other administrative or supervisory personnel of the situation and the response thereto;

- Ask complainant what action he/she would like management to take as a consequence of the harassment; and

- When first interviewing the alleged harasser, remind him/her of the Company's policy against retaliation for making a complaint of prohibited harassment.

G.  **Resolving the Complaint**

Upon completing the investigation of the harassment complaint, the Company will communicate its findings and intended actions to the complainant and alleged harasser.

If the Company finds that prohibited harassment occurred, the harasser will be subject to immediate and appropriate disciplinary procedures, as listed below. The complainant will be informed of the disciplinary action taken.

If the Company determines that no harassment has occurred, this finding will be communicated to the complainant in an appropriate, sensitive manner.

If no determination can be made because the evidence is inconclusive, we will undertake any necessary preventive measures, such as training and monitoring.

1.  **Sanctions**

It is our intent to implement remedial measures to stop the harassment, correct its effects on the complainant, and ensure that the harassment does not reoccur. Therefore, individuals found to have engaged in misconduct constituting prohibited harassment will be severely disciplined, up to and including discharge. In addressing incidents of harassment, the Company's response at a minimum will include reprimanding the offender and preparing a written record. Additional action may include:



Subcontractor



Pickus

Subcontract #: 52361N

### ATTACHMENT # 10
### ANTI-HARASSMENT POLICY

- transfer or reassignment;
- demotion;
- reduction of wages;
- suspension;
- discharge;
- training or counseling of harasser to ensure that s/he understands why his or her conduct violated our anti-harassment policy; and monitoring of harasser to ensure that harassment stops.

Remedial measures will also attempt to put the complainant in the position he or she would have been in had the harassment not occurred.

Examples of measures to correct the effects of the harassment include:

- restoration of leave taken because of the harassment;
- expungement of negative evaluation(s) in employee's personnel file that arose from the harassment;

- reinstatement;
- apology by the harasser;
- monitoring treatment of employee to ensure that s/he is not subjected to retaliation by the harasser or others in the work place because of the complaint; and
- correction of any other harm caused by the harassment (e.g., compensation for lost wages or benefits).

Although the Company's ability to discipline a nonemployee harasser is limited by the degree of control, if any, that the Company has over the alleged harasser, any employee who has been subjected to prohibited harassment from such a person should file a complaint and be assured that action will be taken.

2.    **False Accusations**

If an investigation results in a finding that the complainant falsely accused another of harassment knowingly or in a malicious manner, the complainant will be subject to appropriate sanctions, including the possibility of termination.

3.    **Appeals Process**

If either party directly involved in a harassment investigation is dissatisfied with the outcome or resolution, that individual has the right to appeal the decision. The dissatisfied party must submit his/her written comments within five (5) days of the decision to the President of the Company.

H.    **Maintaining a Written Record of the Complaint**

Pickus Construction and Equipment Co., Inc. will maintain a complete written record of each complaint and how it was investigated and resolved. Written records shall be maintained in a confidential manner.

Written records will be maintained at a minimum for three years from the date of the resolution; if circumstances dictate that the file should be kept for a longer period of time, they will be so kept.


Subcontractor                               23 of 24                               Pickus

Subcontract #:  5236IN

**ATTACHMENT # 10**
**PROHIBITED HARASSMENT**
**COMPLAINT FORM**

I.      Conclusion

Harassment based on one's race, color, sex, national origin, disability, age of 40 or older, or sexual harassment, is prohibited.  Everything reasonably possible will be done by the Company to maintain a workplace free from such harassment.


Name: _____

Date: _____

I wish to complain about the following events:

_____

_____

_____

_____

(Use additional sheets of paper as required.)

I understand that the Company will be conducting an investigation of my complaint.  I authorize the Company to disclose to others portions of the information I have provided now and in the future with respect to that complaint, insofar as the Company feels it must release that information in order to conduct a complete investigation.

_____

_____

_____

_____

However, should you not wish the Company to disclose certain information which you have provided it, please specify that information below.  The Company will try to honor such requests consistent with its legal obligation to identify and correct instances of harassment, including sexual harassment.

I acknowledge that I have read and understand the above statements.

Employee: _____

Date: _____

_____ Subcontractor

Pickus

ATTACHMENT #11

## DAVIS-BACON SUBCONTRACTOR PROVISIONS

ATTACHMENT #11
DAVIS-BACON SUBCONTRACTOR PROVISIONS

This agreement is subject to all laws, codes, ordinances, rules, regulations and orders of governmental authorities having jurisdiction over the site or the work.

The Design-Builder shall coordinate any formal response to Department of Labor Field Representatives, Congressional offices, or other interested parties, with the Managing Member.

Additional clarification and guidance may be issued regarding the implementation and enforcement of, and monitoring compliance with, the Davis-Bacon Act under the Design-Build Agreement and subcontract agreements.

The Design-Builder, which is responsible for all work performed under the Design-Build Agreement, and all subcontractors shall make required reports and records available for inspection, copying, or transcription by the Managing Member or Design-Builder, as appropriate. If the Design-Builder or subcontractor fails to submit required records or to make them available, the Managing Member or Design-Builder, as appropriate, may, after written notice, take such action as may be necessary to cause the suspension of any further payment. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

The Design-Builder or subcontractor shall permit the Managing Member or Design-Builder, as appropriate, or Department of Labor Field Representatives to interview employees during working hours on the job.

Implementation, Enforcement, and Monitoring Procedures.
1. The Design-Builder shall comply with, and require subcontractors through their subcontract agreements to comply with, the Davis-Bacon Act, the applicable Wage Decision, the Payrolls and Basic Records provision, and other associated provisions.
2. The Design-Builder shall require each subcontractor to submit its weekly payroll reports for the month to the Design-Builder no later than the 7th day after the date the subcontractor's employees are paid their last payment for the month. The Design-Builder shall retain these monthly submissions. Subcontractors shall be advised that more frequent submissions may be required to resolve certain issues. The Design-Builder shall complete and retain its own weekly payroll reports.
3. No later than the 10th day after the date the subcontractor's employees are paid their last payment for the month, the Design-Builder shall submit a list to the Managing Member that identifies the subcontractors that submitted the required report and those that did not. The Design-Builder shall take appropriate action to collect all reports. An up-dated list shall be submitted, as appropriate, to the Managing Member.
4. The Design-Builder shall ensure that all employees performing work on this privatization project are properly classified and listed on the payroll reports, and that minimum wages and fringe benefits required by the Wage Decision are being paid. Design-Builder shall be responsible for reconciling, as necessary, a subcontractor's payroll reports with its daily reports; conducting interviews, as appropriate, with subcontractor employees to verify actual wages being paid; and identifying discrepancies and possible violations.
5. The Design-Builder shall notify subcontractors of discrepancies and possible violations, and ensure that corrective actions, if required, are taken within 30 days. If the Design-Builder and the subcontractor cannot resolve discrepancies or possible violations, or required corrective actions have not been taken within 30 days, the Design-Builder shall submit a report to the Managing Member. The report shall identify the discrepancies and possible violations, and

describe the required corrective actions.

6.  Design-Builder shall make all documents and materials, including its own certified payroll reports and basic records, notifications regarding discrepancies and possible violations, and records concerning all follow-up actions, available to Managing Member upon request.

General Decision No. ...........................................(attached).

Davis-Bacon Act.  As a matter of Department of the Navy policy, the Davis-Bacon Act will be included in the Design-Build Agreement and any subcontract agreement for the initial development of the privatization project and any future development phases in which there is a transfer of Government funds from the Family Housing Improvement Fund established by Congress.  In order to effectively implement and monitor compliance with the Act, the Managing Member will assume certain responsibilities that, in a typical Government contract for construction, would have been discharged by the Contracting Officer or other Government employees.

Davis-Bacon Act (40 U.S. Code 3141-44 and 3146-3147).

Sec. 3141. – Definitions.  In this subchapter, the following definitions apply:

(1)     Federal Government.—The term "Federal Government" has the same meaning that the term "United States" had in the Act of March 3, 1931 (ch. 411, 46 Stat. 1494 (known as the Davis-Bacon Act).

(2)     Wages, scale of wages, wage rates, minimum wages, and prevailing wages.— The terms "wages", "scale of wages", "wage rates", "minimum wages", and "prevailing wages" include--

(A) the basic hourly rate of pay; and

(B) for medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the forgoing, for unemployment benefits, life insurance, disability and sickness insurance, or accident insurance, for vacation and holiday pay, for defraying the costs of apprenticeship or other similar programs, or for other bona fide fringe benefits, but only where the contractor or subcontractor is not required by other federal, state, or local law to provide any of those benefits, the amount of--

(i) the rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person under a fund, plan, or program; and

(ii) the rate of costs to the contractor or subcontractor that may be reasonably anticipated in providing benefits to laborers and mechanics pursuant to an enforceable commitment to carry out a financially responsible plan or program which was communicated in writing to the laborers and mechanics affected,

Sec. 3142. - Rate of wages for laborers and mechanics

(a) Application.--

The advertised specifications for every contract in excess of $2,000, to which the Federal Government or the District of Columbia is a party, for construction, alteration, or repair, including painting and decorating, of public buildings or public works of the Government or the District of Columbia that are located in a State or the District of Columbia and which requires or involves the employment of mechanics or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics.

(b)  Based on prevailing wage. -

The minimum wages shall be based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed, or in the District of Columbia if the work is performed there.

(c) Stipulations required in contract. -
Every contract based upon the specifications referred to in subsection (a) must contain stipulations that —
(1) the contractor or subcontractor shall pay all mechanics and laborers employed directly on the site of the work, unconditionally and at least once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less than those stated in the advertised specifications, regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics;
(2) the contractor will post the scale of wages to be paid in a prominent and easily accessible place at the site of the work; and
(3) there may be withheld from the contractor so much of accrued payments as the contracting officer considers necessary to pay to laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the rates of wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by such laborers and mechanics and not refunded to the contractor or subcontractors or their agents.
(d) Discharge of obligation.-
The obligation of a contractor or subcontractor to make payment in accordance with the prevailing wage determinations of the Secretary of Labor, under this subchapter and other laws incorporating this subchapter by reference, may be discharged by making payments in cash, by making contributions described in section 3141(2)(B)(I) of this title, by assuming an enforceable commitment to bear the costs of a plan or program referred to in section 3141(2)(B)(ii) of this title, or by any combination of payment, contribution, and assumption, where the aggregate of the payments, contributions, and costs is not less than the basic hourly rate of pay plus the amount referred to in section 3141(2)(B).
(e) Overtime pay.-
In determining the overtime pay to which a laborer or mechanic is entitled under any federal law, the regular or basic hourly rate of pay (or other alternative rate on which premium rate of overtime compensation is computed) of the laborer or mechanic is deemed to be the rate computed under section 3141(2)(A) of this title, except that where the amount of payments, contributions, or costs incurred with respect to the laborer or mechanic exceeds the applicable prevailing wage, the regular or basic hourly rate of pay (or other alternative rate) is the amount of payments, contributions, or costs actually incurred with respect to the laborer or mechanic minus the greater of the amount of contributions or costs of the types described in section 3141(2)(B) of this title actually incurred with respect to the laborer or mechanic or the amount determined under section 3141(2)(B) but not actually paid.

Sec. 3143. – Termination of Work on Failure to Pay Agreed Wages
Every contract within the scope of this subchapter shall contain a provision that if the contracting officer finds that any laborer or mechanic employed by the contractor or any subcontractor directly on the site of the work covered by the contract has been or is being paid a rate of wages less than the rate of wages required by the contract to be paid. the Federal Government by written notice to the contractor may terminate the contractor's right to proceed with the work or the part of the work as to which there has been a failure to pay the required wages. The Government may have the work completed, by contract or otherwise, and the contractor and the contractor's sureties shall be liable to the Government for any excess costs the Government incurs.

Sec. 3144. - Authority of Comptroller General to Pay Wages and List Contractors violating Contracts
(a) Payment of Wages —
(1) In General — The Comptroller General shall pay directly to laborers and mechanics from

any accrued payments withheld under the terms of a contract any wages found to be due laborers and mechanics under this subchapter.

(2) Right of Action — If the accrued payments withheld under the terms of the contract are insufficient to reimburse all the laborers and mechanics who have not been paid the wages required under this subchapter, the laborers and mechanics have the same right to bring a civil action and intervene against the contractor and the contractor's sureties as is conferred by law on persons furnishing labor or materials. In those proceedings it is not a defense that the laborers and mechanics accepted or agreed to accept less than the required rate of wages or voluntarily made refunds.

(b) List of Contractors Violating Contracts —

(1) In General — The Comptroller General shall distribute to all departments of the Federal Government a list of the names of persons whom the Comptroller General has found to have disregarded their obligations to employees and subcontractors.

(2) Restriction on Awarding Contracts — No contract shall be awarded to persons appearing on the list or to any firm, corporation, partnership, or association in which the persons have an interest until three years have elapsed from the date of publication of the list.

Sec. 3146. - Effect on other Federal laws.
This subchapter does not supersede or impair any authority otherwise granted by federal law to provide for the establishment of specific wage rates.

Sec. 3147. - Suspension of this subchapter during a national emergency
The President may suspend the provisions of this subchapter during a national emergency.

Minimum Wages. (a) All laborers and mechanics employed or working upon the site of the work will be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 C.F.R. Part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the Design-Builder and such laborers and mechanics. Contributions made or costs reasonably anticipated for bona fide fringe benefits under section 1(b)(2) of the Davis-Bacon Act on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of paragraph (d) of this clause; also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs which cover the particular weekly period, are deemed to be constructively made or incurred during such period. Such laborers and mechanics shall be paid not less than the appropriate wage rate and fringe benefits in the wage determination for the classification of work actually performed, without regard to skill, except as provided in the clause entitled Apprentices and Trainees. Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein; provided, that the employer's payroll records accurately set forth the time spent in each classification in which work is performed. The wage determination (including any additional classifications and wage rates conformed under paragraph (b) of this clause) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the Design-Builder and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

(b)(1) The Design-Builder shall require any class of laborers or mechanics, which is not listed in the wage determination and which is to be employed under the Design-Build Agreement or subcontract shall be classified in conformance with the wage determination. The Owner shall

approve an additional classification and wage rate and fringe benefits therefor only when all the following criteria have been met;

(i) The work to be performed by the classification requested is not performed by a classification in the wage determination.

(ii) The classification is utilized in the area by the construction industry.

(iii) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

(iv) With respect to helpers, such a classification prevails in the area in which the work is performed.

(2) If the Design-Builder or subcontractor and the laborers and mechanics to be employed in the classification (if known), or their representatives, and the Owner agree on the classification and wage rate (including the amount designated for fringe benefits, where appropriate), a report of the action taken shall be sent by the Design-Builder, coordinating with Owner to the Administrator of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, Washington, DC 20210.

(3) In the event the Design-Builder, the laborers or mechanics to be employed in the classification, or their representatives, or subcontractor, and do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), the Design-Builder shall refer the questions, including the views of all interested parties and the recommendation of the Design-Builder, to the Administrator of the Wage and Hour Division for Determination.

(4) The wage rate (including fringe benefits, where appropriate) determined pursuant to subparagraphs (b)(2) and (b)(3) of this clause shall be paid to all workers performing work in the classification under the Design-Build Agreement and any subcontract from the first day on which work is performed in the classification.

(c) Whenever the minimum wage rate prescribed in the Design-Build Agreement (as incorporated into any subcontract) for a class of laborers or mechanics includes a fringe benefit which is not expressed as an hourly rate, the Design-Builder shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

(d) If the Design-Builder does not make payments to a trustee or other third person, the Design-Builder or subcontractor may consider as applicable as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program; provided, that the Secretary of Labor has found, upon the written request of the Design-Builder, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the Design-Builder to set aside in a separate account assets for the meeting of obligations under the plan or program.

Withholding of Funds. The Managing Member shall, upon its own action or upon written request of an authorized representative of the Department of Labor, withhold or cause to be withheld from the Design-Builder under the Design-Build Agreement so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees, and helpers, employed by the Design-Builder or any subcontractor the full amount of wages required by the contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee, or helper, employed or working on the site of the work, all or part of the required wages, the Managing Member may, after written notice to the Design-Builder, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased.

Payrolls and Basic Records.

(a) Payrolls and basic records relating to payrolls shall be maintained by the Design-Builder and

all subcontractors during the course of the work and preserved for a period of 3 years for all laborers and mechanics working at the site of the work. Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents of the types described in section 3141(2)(B) of the Davis-Bacon Act), daily and weekly number of hours worked, deductions made, and actual wages paid. If the Design-Builder or any subcontractor does not make payments to a trustee or other third party, as described in the Davis-Bacon Act, the Design-Builder or subcontractor may consider as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program; provided, that the Secretary of labor has found, upon the written request of the Design-Builder or subcontractor, which request shall first be coordinated with the Managing Member, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the Design-Builder or subcontractor to set aside in a separate account assets for the meeting of obligations under the plan or program. Whenever the Secretary of Labor has found that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in the Davis-Bacon Act, the Design-Builder or subcontractor shall maintain records which show that the commitment to provide such benefits is enforceable, that the plan or program is financially responsible, and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. The Design-Builder and any subcontractor employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs.

(b)(1) The Design-Builder shall prepare and retain and subcontractors submit for each week in which any contract work is performed a copy of all payrolls to the Design-Builder no later than the 7th day after the date the subcontractor's employees are paid their last payment for the month. Payrolls shall set out accurately and completely all of the information required to be maintained under paragraph (a). This information may be submitted in any form desired. The Design-Builder shall be responsible for the submission and retention of copies of payrolls by all subcontractors.

(2) Payrolls shall be accompanied by a "Statement of Compliance," signed by the Design-Builder and all subcontractors, as appropriate, or the agent who pays or supervises the payment of the persons employed under the Design-Build Agreement or subcontract, that shall certify-

(i) That the payroll for the payroll period contains the information required to be maintained under paragraph (a) and that such information is correct and complete;

(ii) That each laborer or mechanic (including each helper, apprentice, and trainee) employed under the agreement or contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in the Regulations, 29 C.F.R. Part 3; and

(iii) That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the agreement or contract.

(3) The falsification of the certification may subject the Design-Builder or subcontractor, as applicable, to civil or criminal prosecution under Section 1001 of Title 18 and Section 3729 of Title 31 of the United States Code.

(c) The Design-Builder or subcontractor, as appropriate, shall make the records required under paragraph (a) available for inspection, copying, or transcription by the Design-Builder and the Managing Member. If the Design-Builder or subcontractor fails to submit required records or to make them available, the Design-Builder or Managing Member, as appropriate, may, after

written notice, take such action as may be necessary to cause the suspension of any further payment. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 C.F.R. 5.12.

(d) The Design-Builder or subcontractor, as appropriate, shall permit Design-Builder, the Managing Member and representatives of the Department of Labor to interview employees during working hours on the job.

Apprentices and Trainees.

(a) Apprentices will be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Bureau of Apprenticeship and Training, or with a State Apprenticeship Agency recognized by the Bureau, or if a person is employed in his or her first 90 days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been certified by the Bureau of Apprenticeship and Training or a State Apprenticeship Agency, where appropriate, to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the Design-Builder or subcontractor as to the entire work force under the registered program. Any worker listed on a payroll at an apprentice wage rate, who is not registered or otherwise employed as stated in this paragraph, shall be paid not less than the applicable wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where the Design-Builder or subcontractor is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the Design-Builder's or subcontractor's registered program shall be observed. Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination. In the event the Bureau of Apprenticeship and Training, or a State Apprenticeship Agency recognized by the Bureau, withdraws approval of an apprenticeship program, the Design-Builder or subcontractor will no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(b) Except as provided in 29 C.F.R. 5.16, trainees will not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration. The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed in the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the

corresponding journeyman wage rate in the wage determination which provides for less than full fringe benefits for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate in the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate in the wage determination for the work actually performed. In the event the Employment and Training Administration withdraws approval of a training program, the Design-Builder or subcontractor will no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(c) The utilization of apprentices, trainees, and journeymen under this clause shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 C.F.R. Part 30.

Subcontracts (Labor Standards)

(a) The Design-Builder or subcontractor shall insert in any subcontracts the provisions entitled Davis-Bacon Act, Minimum Wages, Contract Work Hours and Safety Standards Act (Overtime Compensation), Apprentices and Trainees, Payrolls and Basic Records, Withholding of Funds, Subcontracts (Labor Standards), Contract Termination (Debarment), Disputes Concerning Labor Standards, Compliance with Davis-Bacon and Related Act Regulations, and Certification of Eligibility, and such other provisions as the Managing Member may, by appropriate instructions, require. The Design-Builder or subcontractor also shall insert in any subcontracts a provision requiring subcontractors to include these provisions in any lower-tier subcontracts. The Design-Builder shall be responsible for compliance by any subcontractor or lower-tier subcontractor with all the provisions cited in this paragraph.

(b) (1) Within 14 days after award of a subcontract, the Design-Builder shall deliver to the Managing Member a completed Statement and Acknowledgement Form (SF 1413) for each subcontract that the provisions set forth in paragraph (a) have been included in the subcontract.

(2) Within 14 days after the award of any subsequently awarded lower-tier subcontract, the Design-Builder shall deliver to the Managing Member a completed Statement and Acknowledgement Form (SF 1413) for such additional subcontract.

Contract Termination (Debarment). A breach of the provisions entitled Davis-Bacon Act, Contract Work Hours and Safety Standards Act (Overtime Compensation), Apprentices and Trainees, Payrolls and Basic Records, Subcontracts (Labor Standards), Compliance with Davis-Bacon and Related Act Regulations, or Certification of Eligibility may be grounds for termination, and for debarment as a Contractor and subcontractor as provided in 29 C.F.R. 5.12.

Compliance with Davis-Bacon and Related Act Regulations. All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 C.F.R. Parts 1 and 5 are incorporated by reference.

Disputes Concerning Labor Standards. The United States Department of Labor has set forth in 29 C.F.R. Parts 5, 6, and 7 procedures for resolving disputes concerning labor standards requirements. Such disputes shall be resolved in accordance with those procedures and not the Disputes clause of the Design-Build Agreement or any subcontract agreement. "Disputes" will include disputes between the Design-Builder, or any of its subcontractors, and the Managing Member, the U.S. Department of Labor, or the employees or their representatives.

Certification of Eligibility.

(a) By entering into this Design-Build Agreement, the Design-Builder certifies that neither it nor any person or firm who has an interest in the Design-Builder's firm is a person or firm ineligible

to be awarded Government contracts by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

(b) No part of this agreement shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

(c) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

Contract Work Hours and Safety Standards Act (Overtime Compensation).

(a) The Design-Builder and any subcontractor employing laborers or mechanics shall not require or permit them to work over 40 hours in any workweek unless they are paid at least 1 and 1/2 times the basic rate of pay for each hour worked over 40 hours.

(b) The responsible Design-Builder or subcontractor shall be liable for unpaid wages if they violate the terms in paragraph (a). In addition, the Design-Builder or subcontractor shall be liable for the payment of liquidated damages. The Managing Member will assess liquidated damages at the rate of $10 per affected employee for each calendar day on which the employer required or permitted the employee to work in excess of the standard workweek of 40 hours without payment of the overtime wages required by the Contract Work Hours and Safety Standards Act plus any additional charges that may be imposed by the Department of Labor.

(c) The Managing Member will withhold from payments due under the Design-Build Agreement or any subcontract, as applicable, sufficient funds required to satisfy any Design-Builder or subcontractor liabilities for unpaid wages and liquidated damages. If amounts withheld are insufficient to satisfy such liabilities, payments may be withheld at the direction of the U.S. Department of Labor from other Federal or Federally assisted contracts held by the same Design-Builder that are subject to the Contract Work Hours and Safety Standards Act plus any additional charges that may be imposed by the Department of Labor.

(d) The Design-Builder shall insert this provision in subcontracts exceeding $100,000 and require subcontractors to include these provisions in any lower-tier subcontracts. The Design-Builder shall be responsible for compliance by any subcontractor or lower-tier subcontractor with the provisions set forth in paragraphs (a) through (d).

# EXHIBIT C

# Pickus Construction

## Billing Transmittal

Date: 6/8/07

Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placement | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |
| Labor | HOURS | 16 | | | | | | |

Description of Work - Time & Material Items   (All supporting documentation should be attached to this transmittal for billing)

Ft Sheridan - Repaired 3 gates, sightscreen repair due to wind/ construction damage

| | | | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | 16.00 | | | | | |
| Labor | HOURS | | | | | | | |
| Truck 1 | HOURS | | 8.00 | | | | | |
| Truck 2 | HOURS | | 0.00 | | | | | |

| Material Listing | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2-1/2" x 13' posts | 3 | $ 27.93 | $ 83.79 | - | - | - | - | - |
| Tie wires | 250 | $ 0.07 | $ 16.63 | - | - | - | - | - |
| | 0 | $ - | $ - | - | - | - | - | - |
| | 0 | $ - | $ - | - | - | - | - | - |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | | $ 1,296.00 | - | - | - | - | - |
| Total Truck Cost @ $25 per hour | | | $ 200.00 | - | - | - | - | - |
| Total Material Cost | | | $ 100.42 | - | - | - | - | - |
| Total Invoice | | | $ 1,596.42 | - | - | - | - | - |

**Pickus Construction**

Date: 6/8/07

**Billing Transmittal**

Wk Of:

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placement | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |
| Labor | HOURS | | | 16 | | | | |

Description of Work - Time & Material Items    (All supporting documentation should be attached to this transmittal for billing)

Forrestal Village - Repaired 2 gates, sightscreen repair due to wind/ construction damage

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Labor** | HOURS | | 0.00 | 16.00 | | | | | |
| **Truck 1** | HOURS | | 0.00 | 8.00 | | | | | |
| **Truck 2** | HOURS | | 0.00 | | | | | | |
| **Material Listing** | (Qty) | (cost) | | | | | | | |
| 2-1/2" x 13' posts | 2 | $ 27.93 | $    - | $ 55.86 | $    - | $    - | $    - | $    - | |
| tie wires | 250 | $ 0.07 | $    - | $ 16.63 | $    - | $    - | $    - | $    - | |
| | 0 | $    - | $    - | $    - | $    - | $    - | $    - | $    - | |
| | 0 | $    - | $    - | $    - | $    - | $    - | $    - | $    - | |
| | | | $    - | $    - | $    - | $    - | $    - | $    - | |
| | | | $    - | $    - | $    - | $    - | $    - | $    - | |
| | | | $    - | $    - | $    - | $    - | $    - | $    - | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | | $    - | $ 1,296.00 | $    - | $    - | $    - | $    - | |
| Total Truck Cost @ $25 per hour | | | $    - | $ 200.00 | $    - | $    - | $    - | $    - | |
| Total Material Cost | | | $    - | $ 72.49 | $    - | $    - | $    - | $    - | |
| Total Invoice | | | $    - | $ 1,568.49 | $    - | $    - | $    - | $    - | |



# Pickus Construction
**Billing Transmittal**

Date: __6/1/07__

Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placemnt | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $500.00 | | | | | | |
| Labor | HOURS | | | 4 | | | | |

**Description of Work - Time & Material Items**   (All supporting documentation should be attached to this transmittal for billing)

Forrestal Village - at corner of Pennsylvania and Great Lakes Dr - remove 62 ft of fence and install temporary panels

| | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | 0.00 | 4.00 | | | | |
| Truck 1 | HOURS | | 0.00 | | | | | |
| Truck 2 | HOURS | | 0.00 | 2.00 | | | | |

**Material Listing**

| | (Qty) | (cost) | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Temorary panels | 6 | $151.62 | $ | $ - | $ 909.72 | $ - | $ - | $ - | $ - |
| Stands | 7 | $ 18.62 | $ - | $ - | 130.34 | | | | |
| | 0 | $ - | $ - | $ - | | | | | |
| | 0 | $ - | $ - | $ - | | | | | |

| | | | | |
|---|---|---|---|---|
| Total Labor @ $81 per hour | $ | - | $ | 324.00 | $ - | $ - | $ - | $ - |
| Total Truck Cost @ $25 per hour | $ | - | $ | 50.00 | $ - | $ - | $ - | $ - |
| Total Material Cost | $ | - | $ | 1,040.06 | $ - | $ - | $ - | $ - |
| Total Invoice | $ | - | $ | 1,414.06 | $ - | $ - | $ - | $ - |

# Pickus Construction
Billing Transmittal

Date: **5/14/07**

Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placement | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |

| Labor | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | | 12 | | | | |

Description of Work - Time & Material Items    (All supporting documentation should be attached to this transmittal for billing)

Forrestal Village - patch 3 holes 10 ft wide each on Great Lakes Dr-1 on west side and 2 on east side

southeast corner pennsylvania and great lakes - repair 1 gate leaf top frame broken - reweld, straighten gate.

| Labor | | | | | | | | |
|---|---|---|---|---|---|---|---|
| Labor | HOURS | | 12.00 | | | | |
| Truck 1 | HOURS | | 4.00 | | | | |
| Truck 2 | HOURS | | 0.00 | | | | |

| Material Listing | (Qty) | (cost) | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Chain link fabric | 30 | $ 2.93 | $ - | $ 87.78 | $ - | $ - | $ - | $ - |
| 1-1/2" x 13' post | 1 | $ 27.93 | $ - | $ 27.93 | $ - | $ - | $ - | $ - |
| post ties | 40 | $ 0.07 | $ - | 2.66 | $ - | | | - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | $ - | $ - | $ - | $ - | $ - | $ - |

| | | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | $ - | 972.00 | $ - | $ - | $ - | - |
| Total Truck Cost @ $25 per hour | | $ - | 100.00 | $ - | $ - | $ - | - |
| Total Material Cost | | $ - | 118.37 | - | $ - | - | - |
| Total Invoice | | $ - | 1,190.37 | $ - | $ - | $ - | - |

# Pickus Construction
**Billing Transmittal**

Date: 4/10/07.
Wk. Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placement | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | 470 | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |
| Labor | | HOURS | | | | | | |

Description of Work - Time & Material Items    (All supporting documentation should be attached to this transmittal for billing)

Forrestal Village - relocate fence due to utility installations - Area D

| Labor | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | HOURS | 0.00 | | | | | | |
| Truck 1 | HOURS | 0.00 | | | | | | |
| Truck 2 | HOURS | 0.00 | | | | | | |

**Material Listing**

| | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Truck Cost @ $25 per hour | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Material Cost | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Invoice | | $ - | 3,901.00 | $ - | $ - | $ - | $ - | $ - |

# Pickus Construction
### Billing Transmittal

Date: 3/20/07

Wk Of: _____



| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placemnt | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | 365 | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |
| Labor | HOURS | | | | | | | |

### Description of Work - Time & Material Items   (All supporting documentation should be attached to this transmittal for billing)

Forrestal Village - relocate fence due to utility installations - Area A Great Lakes Dr

| Labor | HOURS | 0.00 | | | | | | |
| Truck 1 | HOURS | 0.00 | | | | | | |
| Truck 2 | HOURS | 0.00 | | | | | | |

### Material Listing

| | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 0 | $ - | - | - | - | - | - | - |
| | 0 | $ - | - | - | - | - | - | - |
| | 0 | $ - | - | - | - | - | - | - |
| | 0 | $ - | - | - | - | - | - | - |

Total Labor @ $81 per hour

Total Truck Cost @ $25 per hour

Total Material Cost

Total Invoice ............ 3,029.50

# Pickus Construction

## Billing Transmittal

Date: 3/13/07

Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Core | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placement | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | 625 | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |
| Labor | HOURS | | | | | | | |

Description of Work - Time & Material Items    (All supporting documentation should be attached to this transmittal for billing)

Forrestal Village - relocate fence due to utility installations - Area D

| Labor | HOURS | 0.00 | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Truck 1 | HOURS | 0.00 | | | | | | |
| Truck 2 | HOURS | 0.00 | | | | | | |

| Material Listing | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Truck Cost @ $25 per hour | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Material Cost | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Invoice | | $ - | $ 5,187.50 | $ - | $ - | $ - | $ - | $ - |

# Pickus Construction
## Billing Transmittal

Date: 2/22/07

Wk. Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placemnt | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $ 650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $ 300.00 | | | | | | |
| Labor | HOURS | $ 10.5 | $ 10.50 | | | | | |

Description of Work - Time & Material Items    (All supporting documentation should be attached to this transmittal for billing)

Fort Sheridan - Reic chain link fabric where pushed down by construction equipment

| | | | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | 10.50 | | | | | |
| Truck 1 | HOURS | | 3.00 | | | | | |
| Truck 2 | HOURS | | 0.00 | | | | | |

| Material Lining | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| tie wires / hog rings | 300 | $ 0.07 | $ 19.95 | | | | | |

| | | | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | | $ 850.50 | | $ - | $ - | $ - | $ - |
| Total Truck Cost @ $25 per hour | | | $ 75.00 | | $ - | $ - | $ - | $ - |
| Total Material Cost | | | $ 19.95 | | $ - | $ - | $ - | $ - |
| Total Invoice | | | $ 945.45 | | $ - | $ - | $ - | $ - |

# Pickus Construction
Billing Transmital

Date: __2/14/07__

Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placement | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $300.00 | | 525 | | | | |
| Labor | HOURS | | | | | | | |

Description of Work - Time & Material Items   (All supporting documentation should be attached to this transmittal for billing)

Forrestal Village - relocate fence due to utility installations - Area F

| Labor | HOURS | | 0.00 | | | | | |
| Truck 1 | HOURS | | 0.00 | | | | | |
| Truck 2 | HOURS | | 0.00 | | | | | |

| Material Listing | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| Total Labor @ $81 per hour | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Truck Cost @ $25 per hour | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Material Cost | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Invoice | $ - | 4,357.50 | $ - | $ - | $ - | $ - |

# Pickus Construction

Billing Transmittal

Date: 1/29/07

Wk Of: _____

**Description of Work - Line Items**

| | | Bid Price | Fort Sheridan | Forestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placemnt | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | 84 | | | | | |
| Gate Relocation | EA | $300.00 | 3 | | | | | |

Labor | HOURS

**Description of Work - Time & Material Items**    (All supporting documentation should be attached to this transmittal for billing)

RELOCATE FENCE AND GATES TO A RECESSED POSITION TO ALLOW VISUAL AT ENTRY POINTS TO SITE

Labor | HOURS | 0.00

Truck 1 | HOURS | 0.00
Truck 2 | HOURS | 0.00

**Material Listing**

| (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|
| 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| Total Labor @ $31 per hour | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Truck Cost @ $25 per hour | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Material Cost | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Invoice | 1,597.20 | - | - | - | - | - |

# Pickus Construction
## Billing Transmittal

Date: 1/17/07
Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placemnt | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |
| Labor | HOURS | | 13.5 | | | | | |

Description of Work - Time & Material Items   (All supporting documentation should be attached to this transmittal for billing)

Fort Sheridan - replaced 50 lin ft of fence and one gate leaf damaged due to auto accident

| Labor | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | 13.50 | | | | | |
| Truck 1 | HOURS | | 4.50 | - | | | | |
| Truck 2 | HOURS | | 0.00 | - | | | | |

| Material Listing | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 10 ft high chain link wire | 50 | $ 2.93 | $ 146.30 | - | - | - | - | - |
| 2-1/2" x 13' posts | 5 | $ 27.93 | 139.65 | - | - | - | - | - |
| Tie wires | 36 | $ 0.07 | 2.39 | - | - | - | - | - |
| Sightscreen | 50 | $ 2.99 | 149.63 | - | - | - | - | - |
| gate leaf | 1 | $299.25 | 299.25 | - | - | - | - | - |
| 2-1/2" hinges | 2 | $ 6.30 | 12.61 | - | - | - | - | - |
| | | | - | - | - | - | - | - |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | | $ 1,093.50 | - | - | - | - | - |
| Total Truck Cost @ $25 per hour | | | $ 112.50 | - | - | - | - | - |
| Total Material Cost | | | $ 749.83 | - | - | - | - | - |
| Total Invoice | | | $ 1,955.83 | - | - | - | - | - |

# Pickus Construction
Billing Transmittal

Date: 1/9/07

Wk Of: _____

| Description of Work - Line Items | Bid Price | | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placement | LF | $ 14.95 | $ | $ | - | $ | $ | $ |
| New Truck Gates | EA | $650.00 | $ | $ | - | $ | $ | $ |
| Fence Relocation | LF | $ 8.30 | $ | $ | - | $ | $ | $ |
| Gate Relocation | EA | $300.00 | $ | $ | - | $ | $ | $ |

**Labor**

| | | | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | | 8 | | | | |

**Description of Work - Time & Material Items** (All supporting documentation should be attached to this transmittal for billing)

Forrestal Village - Remove temporary panels across street, re-install gates and fence.

**Labor**

| | | | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | 0.00 | 8.00 | | | | |
| Truck 1 | HOURS | | 0.00 | | | | | |
| Truck 2 | HOURS | | 0.00 | 4.00 | | | | |

**Material Listing**

| | (Qty) | (cost) | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| sakrete (bags) | 8 | $ 5.32 | $ - | 42.56 | $ - | $ | $ - | $ - |
| | 0 | $ - | $ - | $ | - | $ | $ | $ |
| | 0 | $ - | $ - | - | - | $ | $ | $ |
| | 0 | $ . | $ - | - | - | $ | $ | $ |
| | | | $ - | $ | - | $ | $ | $ |
| | | | $ - | $ | - | $ | $ | $ |

| | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | $ - | 648.00 | $ - | $ - | $ - | $ - |
| Total Truck Cost @ $25 per hour | $ - | 100.00 | $ - | $ - | $ - | $ - |
| Total Material Cost | $ - | 42.56 | - | $ - | $ - | $ - |
| Total Invoice | $ - | 790.56 | $ - | $ - | $ - | - |

# Pickus Construction

**Billing Transmittal**

Date: 12/21/06

Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placemnt | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |
| Labor | HOURS | | | 6 | | | | |

Description of Work - Time & Material Items    (All supporting documentation should be attached to this transmittal for billing)

Forrestal Village - Install 8 temporary fence panels at streets where gates were removed to allow paving.

| | | | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| **Labor** | HOURS | | 0.00 | 6.00 | | | | |
| Truck 1 | HOURS | | 0.00 | 3.00 | | | | |
| Truck 2 | HOURS | | 0.00 | | | | | |

| Material Listing | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Temporary Fence Panels | 8 | $151.62 | $ - | 1,212.96 | $ - | $ - | $ - | $ - |
| Panel Stands | 9 | $ 18.62 | $ - | 167.58 | $ - | $ - | $ - | $ - |
| Sight Screen 10 ft high (per lin ft) | 96 | $ 2.99 | $ - | 287.28 | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | - | $ - | $ - | $ - | $ - |
| | | | $ - | - | $ - | $ - | $ - | $ - |
| | | | $ - | - | $ - | $ - | $ - | $ - |
| | | | $ - | - | $ - | $ - | $ - | $ - |
| | | | $ - | - | $ - | $ - | $ - | $ - |

| | | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | $ - | 486.00 | $ - | $ - | $ - | - |
| Total Truck Cost @ $25 per hour | | $ - | 75.00 | $ - | $ - | $ - | - |
| Total Material Cost | | $ - | 1,667.82 | $ - | $ - | $ - | - |
| Total Invoice | | $ - | 2,228.82 | $ - | $ - | $ - | - |

# Pickus Construction

**Billing Transmittal**

Date: 12/20/06

Wk Of: _____

| Description of Work - Line Items | | | Bid Price | Fort Sheridan | Forestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|---|
| New Placemnt | LF | | $ 14.95 | $ 55.86 | - | - | - | - | - |
| New Truck Gates | EA | | $ 650.00 | | - | - | - | - | - |
| Fence Relocation | LF | | $ 8.30 | | - | - | - | - | - |
| Gate Relocation | EA | | $ 300.00 | | - | - | - | - | - |

| Description of Work - Time & Material Items | (All supporting documentation should be attached to this transmittal for billing) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Fort Sheridan - replace gate and 2 posts damaged by truck | | | | | | | | | |

| Labor | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | 6 | | | | | | |
| Labor | HOURS | | 6.00 | | | | | | |
| Truck 1 | HOURS | | 3.00 | | | | | | |
| Truck 2 | HOURS | | 0.00 | | | | | | |

| Material Listing | (Qty) | (cost) | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| gate posts 2-1/2" x 13' | 2 | $ 27.93 | | $ 55.86 | - | - | - | - | - |
| gate leafs | 2 | $ 299.25 | | $ 598.50 | - | - | - | - | - |
| 2-1/2" hinges | 4 | $ 6.30 | | $ 25.22 | - | - | - | - | - |
| sakrete (bags) | 6 | $ 5.32 | | $ 31.92 | - | - | - | - | - |
| | | | | $ - | - | - | - | - | - |
| | | | | $ - | - | - | - | - | - |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | | | $ 486.00 | - | - | - | - | - |
| Total Truck Cost @ $25 per hour | | | | $ 75.00 | - | - | - | - | - |
| Total Material Cost | | | | $ 711.50 | - | - | - | - | - |
| Total Invoice | | | | $ 1,272.50 | - | - | - | - | - |

# Pickus Construction
## Billing Transmittal

Date: 12/19/06

Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placement | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |
| Labor | HOURS | | 9 | | | | | |

Description of Work - Time & Material Items   (All supporting documentation should be attached to this transmittal for billing)

Fort Sheridan - repair fence in various places due to damage by trucks

| | | | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | 9.00 | | | | | |
| Truck 1 | HOURS | | 3.00 | | | | | |
| Truck 2 | HOURS | | 0.00 | | | | | |

| Material Listing | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| tie wires / hog rings | 150 | $ 0.07 | $ 9.98 | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | | | | | |
| | 0 | $ - | $ - | | | | | |
| | 0 | $ - | $ - | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | | 729.00 | $ - | $ - | $ - | $ - | $ - |
| Total Truck Cost @ $25 per hour | | | 75.00 | $ - | $ - | $ - | $ - | $ - |
| Total Material Cost | | | 9.98 | $ - | $ - | $ - | $ - | $ - |
| Total Invoice | | | 813.98 | $ - | $ - | $ - | $ - | $ - |

# Pickus Construction
## Billing Transmittal

Date: 11/10/06

Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| View Placemat | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |
| Labor | HOURS | | | | 7 | | | |

**Description of Work - Time & Material Items**   (All supporting documentation should be attached to this transmittal for billing)

Glenview - Replace one damaged gate leaf and install 3 temporary panels in fence line for access.

| Labor | HOURS | | 0.00 | - | 7.00 | - | - | - |
|---|---|---|---|---|---|---|---|---|
| Truck 1 | HOURS | | 0.00 | | 3.50 | | | |
| Truck 2 | HOURS | | 0.00 | | | | | |

| Material Listing | (Qty) | (cost) | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| Gate leaf | 1 | $299.25 | $ - | $ - | $ 299.25 | $ - | $ - | $ - |
| Temporary Fence Panel | 3 | $151.62 | $ - | $ - | $ 454.86 | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | $ - | $ - | $ - | $ - | $ - | $ - |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | | $ - | $ - | 567.00 | $ - | $ - | $ - |
| Total Truck Cost @ $25 per hour | | | $ - | $ - | 87.50 | $ - | $ - | $ - |
| Total Material Cost | | | $ - | $ - | 754.11 | $ - | $ - | $ - |
| Total Invoice | | | $ - | $ - | 1,408.61 | $ - | $ - | $ - |

# Pickus Construction
## Billing Transmittal

**Date:** 10/25/06  
**Wk Of:** _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placement | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | 445 | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |
| Labor | HOURS | | 1 | | | | | |

**Description of Work - Time & Material Items**　(All supporting documentation should be attached to this transmittal for billing)

Forrestal Village - relocate (fence due to utility installations - Area A Great Lakes Dr

| Labor | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | 0.00 | | | | | | |
| Truck 1 | HOURS | 0.00 | | | | | | |
| Truck 2 | HOURS | 0.00 | | | | | | |

## Material Listing

| | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | | - | - | - | - | - | - |
| Total Truck Cost @ $25 per hour | | | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Material Cost | | | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Invoice | | | - | 3,693.50 | - | - | - | - |

# Pickus Construction
## Billing Transmittal

Date: 10/19/06  Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placemnt | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | 397 | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |
| Labor | HOURS | | | | | | | |

Description of Work - Time & Material Items    (All supporting documentation should be attached to this transmittal for billing)

Forrestal Village - relocate fence due to utility installations - Area C Great Lakes Dr

| | | Price | Fort Sheridan | Forrestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | 0.00 | | | | | | |
| Truck 1 | HOURS | 0.00 | | | | | | |
| Truck 2 | HOURS | 0.00 | | | | | | |

Material Listing    (Qty)    (cost)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 0 | $ - | | | | | | |
| 0 | $ - | | | | | | |
| 0 | $ - | | | | | | |
| 0 | $ - | | | | | | |

Total Labor @ $81 per hour
Total Truck Cost @ $25 per hour
Total Material Cost
Total Invoice    3,295.10

# Pickus Construction
Billing Transmittal

Date: 10/12/06

Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placement | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |

| Labor | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | 8 | 8 | | | | |

**Description of Work - Time & Material Items**   (All supporting documentation should be attached to this transmittal for billing)

Forestal Village - Remove temporary panels across street, re-install gates and fence.

| Labor | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | | 8.00 | | | | |
| Truck 1 | HOURS | | 0.00 | | | | | |
| Truck 2 | HOURS | | 0.00 | 4.00 | | | | |

| Material Listing | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| sakcrete (bags) | 8 | $ 5.32 | - | 42.56 | - | - | - | - |
| | 0 | $ - | - | - | - | - | - | - |
| | 0 | $ - | - | - | - | - | - | - |
| | 0 | $ - | - | - | - | - | - | - |
| | | $ | - | - | - | - | - | - |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | | $ | 648.00 | $ - | $ - | $ - | $ - |
| Total Truck Cost @ $25 per hour | | | $ | 100.00 | $ - | $ - | $ - | $ - |
| Total Material Cost | | | $ | 42.56 | $ - | $ - | $ - | $ - |
| Total Invoice | | | $ | 790.56 | $ - | $ - | $ - | $ - |

# Pickus Construction
## Billing Transmittal

Date: 10/9/06
Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placemnt | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | 425 | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |

| Labor | | | | | | | | |
| | HOURS | | | | | | | |

Description of Work - Time & Material Items    (All supporting documentation should be attached to this transmittal for billing)

Forestal Village - relocate fence due to utility conflicts - Area C Great Lakes Dr

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | 0.00 | | | | | | |
| Truck 1 | HOURS | 0.00 | | | | | | |
| Truck 2 | HOURS | 0.00 | | | | | | |

| Material Listing | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| | | | Fort Sheridan | Forestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | | - | - | - | - | - | - |
| Total Truck Cost @ $25 per hour | | | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Material Cost | | | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Invoice | | | $ - | 3,527.50 | $ - | $ - | $ - | $ - |

# Pickus Construction
## Billing Transmittal

Date: 10/4/06
Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Forestal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placemnt | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $300.00 | | | | | | |
| Labor | HOURS | | | 6 | | | | |

Description of Work - Time & Material Items   (All supporting documentation should be attached to this transmittal for billing)

Forestal Village - Furnish and install temporary panels at street entrances where gates were removed to allow paving.

| Labor | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | | 6.00 | | | | |
| Truck 1 | HOURS | | 0.00 | | | | | |
| Truck 2 | HOURS | | 0.00 | 3.00 | | | | |

| Material Listing | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Temporary Fence Panels | | | | | | | | |
| Panel Stands | 12 | $151.62 | $    - | $  1,819.44 | $    - | $    - | $    - | $    - |
| Sight Screen 10 ft high (per lin ft) | 13 | $ 18.62 | $    - | $   242.06 | $    - | $    - | $    - | $    - |
| | 144 | $ 2.99 | $    - | $   430.92 | $    - | $    - | $    - | $    - |
| | 0 | $    - | $    - | $    - | $    - | $    - | $    - | $    - |
| | | | $    - | $    - | $    - | $    - | $    - | $    - |
| | | | $    - | $    - | $    - | $    - | $    - | $    - |
| | | | $    - | $    - | $    - | $    - | $    - | $    - |
| | | | | | | | | |
| Total Labor @ $81 per hour | | | $    - | $   486.00 | $    - | $    - | $    - | $    - |
| Total Truck Cost @ $25 per hour | | | $    - | $    75.00 | $    - | $    - | $    - | $    - |
| Total Material Cost | | | $    - | $ 2,492.42 | $    - | $    - | $    - | $    - |
| Total Invoice | | | $    - | $ 3,053.42 | $    - | $    - | $    - | $    - |

# Pickus Construction
Billing Transmittal

Date: 8/9/06

Wk Of: _____

| Description of Work - Line Items | | Bid Price | Fort Sheridan | Portcatal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| New Placement | LF | $ 14.95 | | | | | | |
| New Truck Gates | EA | $ 650.00 | | | | | | |
| Fence Relocation | LF | $ 8.30 | | | | | | |
| Gate Relocation | EA | $ 300.00 | | | | | | |
| | | | | | | | | |
| Labor | HOURS | 6 | | | | | | |

| | | Bid Price | Fort Sheridan | Portcatal | Glenview | Halsey Village | Hospital Cove | Nimitz |
|---|---|---|---|---|---|---|---|---|
| Labor | HOURS | | 6.00 | | | | | |
| | | | | | | | | |
| Truck 1 | HOURS | | 3.00 | | | | | |
| Truck 2 | HOURS | | 0.00 | | | | | |

| Material Listing | (Qty) | (cost) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| gate posts 2-1/2" x 13' | 2 | $ 27.93 | $ 55.86 | | | | | |
| gate leafs | 1 | $ 299.25 | $ 299.25 | | | | | |
| 2-1/2" hinges | 4 | $ 5.30 | $ 25.22 | | | | | |
| sakrete (bags) | 6 | $ 5.32 | $ 31.92 | | | | | |

Description of Work - Time & Material Items    (All supporting documentation should be attached to this transmittal for billing.)

Fort Sheridan - Replaced two gate posts and one gate

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Labor @ $81 per hour | | $ 486.00 | $ - | $ - | $ - | $ - | $ - |
| Total Truck Cost @ $25 per hour | | $ 75.00 | $ - | $ - | $ - | $ - | $ - |
| Total Material Cost | | $ 412.25 | $ - | $ - | $ - | $ - | $ - |
| Total Invoice | | $ 973.25 | $ - | $ - | $ - | $ - | $ - |